J-S31016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: A.B., MOTHER | |
| | No. 1976 MDA 2015 |

Appeal from the Order Entered November 2, 2015
In the Court of Common Pleas of Columbia County
Civil Division at No(s): CP-19-DP-0000032-2013

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.*

MEMORANDUM BY OTT, J.:                    **FILED MAY 10, 2016**

A.B. ("Mother") appeals from the order entered November 2, 2015, in the Court of Common Pleas of Columbia County, which changed the permanency goal of her minor daughter, A.L., born in March of 2012 ("Child"), to adoption.[1]  After careful review, we affirm.

On November 6, 2013, Columbia County Children and Youth Services ("CYS") filed a dependency petition, in which it alleged, *inter alia*, that Mother was using cocaine, and that Child was in the care of Mother's

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Child's biological father, T.L. ("Father"), did not appear at the goal change hearing, despite notice being sent to his last known address.  **See** N.T., 10/30/2015, at 3-7.  Father has not filed a brief in connection with this appeal, nor did he file his own separate appeal.

landlady, K.P., who no longer wanted to care for Child, and who tested positive for marijuana and methamphetamine.[2] Dependency Petition, 11/6/2013 (Allegations of Dependency at ¶ (2)). Child was adjudicated dependent by order dated November 6, 2013, and entered January 13, 2014.

On June 9, 2015, CYS filed a petition to change Child's permanency goal to adoption. A goal change hearing was held on October 30, 2015, during which the trial court heard the testimony of CYS paralegal, Sarah Gilbert; CYS caseworker, Natalie Patterson; drug and alcohol treatment specialist, Dale McElwee; and Mother. On November 2, 2015, the trial court entered its order changing Child's permanency goal to adoption. Mother timely filed a notice of appeal on November 12, 2015.[3]

_____

[2] CYS had previously filed a dependency petition on June 24, 2013. However, that petition was withdrawn on October 10, 2013, after Child was taken to New York to live with Father. **See** Dependency Petition, 11/6/2013 (Allegations of Dependency at ¶ (1)). CYS subsequently received a report on October 29, 2013, that Child had returned to Pennsylvania and was living with K.P., which led to CYS filing its second dependency petition. **Id.** (Allegations of Dependency at ¶ (2)).

[3] We note that Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal at the same time as her notice of appeal. However, Mother filed a concise statement on November 20, 2015. For reasons that are not clear from the record, the trial court later ordered Mother to file a concise statement on November 23, 2015. We have accepted Mother's concise statement pursuant to **In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

Mother now raises the following issues for our review.

1. That the [trial c]ourt erred when it granted the goal change to "adoption", there were numerous factors that did not rise to the statutory requirements.

2. That [CYS] did not meet their burden.

Mother's brief at 4 (unpaginated).[4]

We consider these issues mindful of our well-settled standard of review.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

---

[4] While Mother includes two issues in her statement of questions involved, she combines these issues into a single argument in her brief.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, the trial court concluded that a goal change to adoption is in Child's best interest. The court found that Child has been in placement for over two years, and that Mother has failed to remedy the instability and substance abuse that caused Child to be removed from her care. Trial Court Opinion, 12/30/2015, at 4. The court noted that Child currently is in a safe, stable, and nurturing environment, and that Child's life cannot be put on hold any longer. *Id.*

In response, Mother argues that she has remedied the conditions which led to Child's placement in foster care. Mother's brief at 5-6 (unpaginated). Mother contends that she has attended drug and alcohol treatment, that she has attended parenting classes, that she is employed, that she is attending school, and that she has an appropriate home for Child. *Id.* at 6.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the goal change hearing, CYS caseworker, Natalie Patterson, testified that she was assigned to this matter on December 2, 2013, about a month after Child was placed in foster care. N.T., 10/30/2015, at 9. Ms. Patterson explained that CYS prepared a Family Service Plan ("FSP") for Mother, which included several objectives for Mother to complete. *Id.* at 15. Pursuant to the FSP, Mother was required to

- 4 -

refrain from drug use and criminal activity, refrain from associating with inappropriate people, obtain and maintain stable housing, and "spend adequate time with the child to meet the child's emotional needs and the need for bonding . . . ." *Id.* Ms. Patterson reported that Mother has failed to comply with her FSP objectives in various respects.

Concerning Mother's drug and alcohol objective, Ms. Patterson explained that Mother attended several drug treatment programs, beginning in January of 2015. *Id.* at 28-36. Despite Mother's participation in these programs, Mother has continued to produce positive drug tests. *See* Exhibit CYS-C; Exhibit CYS-C1 (Mother's drug test results). Ms. Patterson reported that Mother tested positive for cocaine on June 21, 2013, September 9, 2013, December 24, 2013, January 28, 2014, February 7, 2014, October 8, 2014, October 23, 2014, December 3, 2014, and February 25, 2015. N.T., 10/30/2015, at 18-24. Mother tested positive for ethanol on August 6, 2013, and August 11, 2015. *Id.* at 17-18, 23. Most recently, Mother tested positive for marijuana shortly before the goal change hearing on October 20, 2015.[5] *Id.* at 24-25.

With respect to criminal activity, Ms. Patterson reported that Mother is facing multiple driving under the influence ("DUI") charges. Mother pled

---

[5] Mother also had numerous drug tests come back diluted and/or with abnormal creatinine levels, including tests on July 15, 2013, July 30, 2014, September 1, 2015, and September 7, 2015. N.T., 10/30/2015, at 16-20, 23-24.

guilty to DUI on October 20, 2015, in Luzerne County. *Id.* at 63; Exhibit CYS-K (Luzerne County court summary). Mother had another DUI charge pending in Luzerne County, and was due in court on December 2, 2015. N.T., 10/30/2015, at 49-50, 63; Exhibit CYS-K (Luzerne County court summary). Mother also had a third DUI charge pending in Columbia County. N.T., 10/30/2015, at 50, 63; Exhibit CYS-L (Columbia County court summary). Finally, Mother was scheduled to be in court on November 23, 2015, due to a charge on driving with a suspended or revoked license.[6] N.T., 10/30/2015, at 51, 63-64; Exhibit CYS-M (magisterial district court summary).

Additionally, Ms. Patterson testified that Mother has failed to maintain stable housing. At the time CYS first became involved with Child, Mother was residing in Queens, New York, and was "back and forth" between Queens and Bloomsburg, Pennsylvania. N.T., 10/30/2015, at 39. Mother then relocated to Miami Beach, Florida in February of 2014. *Id.* at 40. Mother returned to Pennsylvania in July of 2014. *Id.* at 40-41. Since returning to Pennsylvania, Mother has moved an additional two times, once in July of 2015, and again in September of 2015, when she moved in with her current boyfriend. *Id.* at 42. Mother also has failed to maintain

---

[6] Exhibit CYS-M does not indicate where this charge was filed. Based on the magisterial district court docket number, it appears that the charge was filed in Schuylkill County.

consistent employment. Since February of 2014, Mother has reported having five different employers for relatively brief periods of time. *Id.* at 42-46. At best, Mother reported working for the same company for about five months while living in Florida. *Id.* at 42-43.

Ms. Patterson further testified that Mother has attended her visits with Child inconsistently. Since December of 2013, Mother attended only thirty-two of seventy-one possible visits with Child.[7] *Id.* at 46-48, 64. When Mother does attend visits, she is consistently late. *Id.* at 46-47. Most recently, Mother failed to attend visits on September 22, 2015, and October 6, 2015. *Id.* at 48. Ms. Patterson noted that Child did not seem upset when Mother failed to attend those visits. *Id.* at 49. Ms. Patterson stated that Child used to call Mother "mommy," but has referred to Mother by her first name for the last six months or so. *Id.* at 49, 65-66. Child is in a pre-adoptive foster home, and now refers to foster parents as "[m]om and dad." *Id.* at 57.

Thus, the record supports the trial court's decision to change Child's permanency goal to adoption. Since Child was placed in foster care, Mother has been given ample opportunity to comply with her FSP objectives. Instead, Mother has continued to engage in illegal drug use and criminal activity. She has failed to maintain stable employment and housing, and

---

[7] Ms. Patterson agreed that about ten of those visits were missed due to Mother residing in Florida for five months. N.T., 10/30/2015, at 64-65.

she has failed to visit Child consistently. Mother has shown repeatedly that she is incapable of acting as Child's parent. CYF has presented clear and convincing evidence pursuant to 42 Pa.C.S.A. §6351(f) in support of a goal change, and we note the Guardian *Ad Litem* has filed a brief in support of the goal change.

Because we conclude that the trial court did not abuse its discretion by changing Child's permanency goal to adoption, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016