J-S50031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.B., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S., MOTHER | No. 174 MDA 2016 |

Appeal from the Decree November 30, 2015
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): Adoptee 27 of 2015

| | |
|---|---|
| IN THE INTEREST OF: J.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S., MOTHER | No. 175 MDA 2016 |

Appeal from the Decree November 30, 2015
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): 28 of 2015

| | |
|---|---|
| IN THE INTEREST OF: G.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S., MOTHER | No. 176 MDA 2016 |

Appeal from the Decree November 30, 2015
In the Court of Common Pleas of Northumberland County

Orphans' Court at No(s): Adoptee 29 of 2015

| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF D.S., MOTHER | |
| | No. 177 MDA 2016 |

Appeal from the Decree November 30, 2015
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): Adoptee 30 of 2015

| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: D.S., MOTHER | |
| | No. 178 MDA 2016 |

Appeal from the Decree November 30, 2015
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): 31 of 2015

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 08, 2016**

Appellant, D.S. (Mother), appeals from the November 30, 2015 decrees involuntarily terminating her parental rights to her minor children,

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

A.B.1, a female born in May 2002; J.B., a female born in July 2003; R.B., Jr., a male born in July 2006; A.B.2, a female born in September 2008; and G.B., a female born in December 2009 (collectively, the Children).[1] After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows. The Children were removed from Mother's care in July 2014, due to concerns with respect to Mother's housing. N.T., 9/10/15, at 35-42. Mother's home was cluttered, dirty, and potentially dangerous due to exposed wiring. *Id.* at 35-40. Mother also continued to associate with inappropriate people. *Id.* at 40-41. For example, Mother was allowing a known sex offender to visit the home. *Id.* at 41. The Children were adjudicated dependent on July 17, 2014. CYS's Exhibit 1 at 2.

On July 28, 2015, Children and Youth Services (CYS) filed petitions to involuntarily terminate Mother's parental rights to the Children. A termination hearing was held on September 10, 2015, and November 30, 2015, during which the orphans' court heard the testimony of CYS caseworker, Walter Yadlosky; CYS caseworker, Jennifer Edwards; A.B.1's emotional support teacher, Nicole Hicks; CYS caseworker, Cathryn Baker; and psychologist, Robert J. Meacham, M.S. On November 30, 2015, at the conclusion of the hearing, the orphans' court entered decrees involuntarily

---

[1] The Children's father, R.B., Sr., relinquished his parental rights voluntarily.

terminating Mother's parental rights to the Children. Mother timely filed notices of appeal on December 30, 2015.[2] On February 22, 2016, this Court consolidated Mother's appeals *sua sponte*. **See generally** Pa.R.A.P. 513.

On appeal, Mother raises the following issue for our review.

> Did Appellee [CYS] meet its burden in proving by clear and convincing evidence that the termination of Appellant Mother's parental rights would not cause irreparable harm to the [C]hildren pursuant to subsections (a)(5), (a)(8) and (b) of 23 Pa.C.S.A. §[]2511?"

Mother's Brief at 2.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

---

[2] We note that Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file concise statements of errors complained of on appeal at the same time as her notices of appeal. Mother later filed concise statements on January 8, 2016. Nevertheless, as we discern no prejudice in this case, we decline to deem Mother's issues on appeal waived. **See In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

> We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

- 5 -

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

…

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

…

> **(b)  Other  considerations.--**The  court  in terminating the rights of a parent shall give primary consideration  to  the  developmental,  physical  and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With  respect  to  any  petition  filed  pursuant  to subsection  (a)(1),  (6)  or  (8),  the  court  shall  not consider  any  efforts  by  the  parent  to  remedy  the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

Here, Mother argues that CYS failed to prove by clear and convincing evidence that terminating her parental rights would best serve the needs and welfare of the Children.  While Mother references Sections 2511(a)(5), (a)(8), and (b) in her statement of questions involved, Mother makes no further mention of Section 2511(a) in the summary of argument and argument sections of her brief.  Instead, Mother focuses her argument solely on Section 2511(b).  Thus, we conclude that Mother has waived any claim with respect to Section 2511(a), and we proceed to analyze the termination of Mother's parental rights pursuant to Section 2511(b) only.[3]  ***See In re***

---

[3] We observe that Sections 2511(a)(5), (a)(8), and (b), each require a court considering a termination petition to assess the needs and welfare of the relevant child or children.  However, the needs and welfare analysis required by Sections 2511(a)(5) and (a)(8) is distinct from the needs and welfare

*(Footnote Continued Next Page)*

***W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364

(Pa. 2011), *quoting **In re A.C.***, 991 A.2d 884, 897 (Pa. Super. 2010)

(stating, "where an appellate brief fails to provide any discussion of a claim

with citation to relevant authority or fails to develop the issue in any other

meaningful fashion capable of review, that claim is waived[]").

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

analysis required by Section 2511(b), and must be addressed separately. ***See In re C.L.G***., 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (stating, "while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' … they are distinct in that we must address Section 2511(a) before reaching Section 2511(b)"); ***In re Matsock***, 611 A.2d 737, 748 (Pa. Super. 1992) (stating, "[t]hus, in termination proceedings based on paragraph (a)(5), such as the one here, the needs and welfare of the child must be considered *twice;* once under subsection (a), and if all five requirements of subsection (a) are met, then again under subsection (b)").

> foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015), *quoting*

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal quotation marks and citations omitted).

Instantly, the orphans' court found that terminating Mother's parental rights would be in the best interests of the Children.[4] N.T., 11/30/15, at 90. The orphans' court acknowledged that Mother and the Children are bonded. *Id.* However, the orphans' court reasoned that Mother's bond with the Children is "[n]ot a parental bond, but a bond of familiarity." *Id.*

Mother argues that she has maintained a strong bond with the Children, that the Children know her as their mother, and they want to return to her care. Mother's Brief at 8. Mother contends that severing her bond with the Children will necessarily sever the bond that the Children share with each other, as the Children do not reside together in the same

_____

[4] Mother's parental rights were terminated by the Honorable Anthony Rosini. According to an opinion filed on March 8, 2016, by the Honorable Hugh A. Jones, Judge Rosini is no longing serving as a judge on the Court of Common Pleas, as he was appointed only to serve out the unexpired term of former Northumberland County President Judge, the Honorable Robert B. Sacavage. Orphans' Court Opinion, 3/8/16, at 1. In the opinion, Judge Jones directs our attention to Judge Rosini's remarks at the conclusion of the termination hearing in support of the termination decrees. *Id.* at 5-6.

foster home, and that the loss of these bonds will have a negative impact on the Children's emotional well-being. *Id.* at 10. Mother also stresses that the Children do not reside in pre-adoptive foster homes, and that terminating her parental rights will not necessarily provide the Children with permanent caregivers. *Id.* at 10-11.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, psychologist, Robert J. Meacham, M.S., testified that he conducted a permanency evaluation of Mother and the Children. N.T., 11/30/15, at 7. During his evaluation, Mr. Meacham interviewed Mother and each of the Children separately. *Id.* at 10-11. Mr. Meacham also observed two visits between Mother and the Children. *Id.* 11, 41. As a result of this evaluation, Mr. Meacham prepared a report, entitled "Psychological Evaluation for Permanency," which was admitted into evidence as CYS's Exhibit 7.

Concerning the existence of a parent-child bond, Mr. Meacham acknowledged in his report that all of the Children, with the exception of G.B., stated during their interviews that they would like to be returned to Mother's care. CYS's Exhibit 7 at 7. However, Mr. Meacham testified that the Children's preferences were not well-reasoned, as the Children wanted to return to Mother's care for reasons that were irrelevant to any emotional connection to Mother. *Id.* at 10. R.B., Jr., stated that he would like to return to Mother's care because "I will share a room with my brother,"

meaning Mother's older son, D.S.[5] *Id.* at 7. A.B.2 stated that she would like to return to Mother's care because she will be able to "play with her toys, set up her doll house and sleep in her own bedroom." *Id.*

With respect to the two oldest Children, A.B.1 and J.B., Mr. Meacham testified at length during the termination hearing concerning their preference to return to Mother's care. Mr. Meacham noted that both girls stated during their interviews that they would like to return to Mother's care so that they could assist Mother in caring for the other Children. N.T., 11/30/15, at 18-19, 26-27. Mr. Meacham explained that Mother rarely engaged the Children during the visits he observed. *Id.* at 18. Instead, A.B.1 and J.B. took it upon themselves to supervise their younger siblings. *Id.* Mr. Meacham believed that A.B.1 and J.B. have been "parentified," meaning that they have adapted to Mother's neglectful parenting style by taking on parenting responsibilities themselves. *Id.* at 33-35; CYS's Exhibit 7 at 6-7, 9.

Ultimately, Mr. Meacham provided the following description of the bond between Mother and the Children.

> There is clearly, … a bond of familiarity. They know that that's mom. They enjoy playing with her. They're also aware that they have spent a significant portion of their individual lives not living with her. As I mentioned, the older two children -- the older

---

[5] At the time Mr. Meacham interviewed R.B., Jr., Mother had already relinquished her parental rights to D.S. Agency's Exhibit 7 at 1, 7. D.S. was removed from Mother's care in February 2014, due to allegations that he had sexually abused his siblings. N.T., 9/10/15, at 30.

> two girls appear to have a desire, and part of their attachment to their mom is their desire to help out in the parenting role with the younger children.
>
> I did not see it as a bond that's dependent upon any of the children having significant experience with their mother providing them with safety, security, acceptable living conditions, stable living conditions. They look to their foster parents, really, more for their everyday needs and their long-term stability and safety than they do their mother.
>
> …
>
> I think it's appropriate for the status quo. It's appropriate for the history. I think that they -- that's their mother. They know that that's their mother, but they don't talk about her personally in longing terms. They don't talk about having a memory of what they've done with her. They talked about either wanting to do something for her or living in their room that they know is at mother's home, or playing with their possessions. Again, very much a bond of familiarity as opposed to safety, security, consistency.

N.T., 11/30/15, at 22-23. Mr. Meacham concluded, in his opinion, the "bond of familiarity" between Mother and the Children "should not be the primary consideration when it comes to determining future permanency of the [C]hildren." *Id.* at 27-28.

Mr. Meacham further opined that severing the Children's bond with Mother would not cause them any emotional damage. *Id.* at 29-30. Mr. Meacham explained that he did not believe that the Children were being emotionally damaged by not currently being in Mother's care. *Id.* at 28-29. To the contrary, Mr. Meacham opined that Mother likely caused the

Children's behavioral and emotional problems. *Id.* at 29. Mr. Meacham explained that the Children have been removed from Mother's care on multiple occasions, and that the Children have experienced considerable instability. *Id.* at 9, 13. Mr. Meacham stressed the importance of providing permanency for the Children, as continued instability "may cause behavioral and emotional reactions that would actually reach a diagnostic level. Meaning that their behaviors or their responses to caregivers and others would be so significantly impaired that their emotional well-being is jeopardized." *Id.* at 13-14.

Thus, the record supports the conclusion of the orphans' court that terminating Mother's parental rights will best serve the needs and welfare of the Children. The record confirms that the Children do not share a parent-child bond with Mother, and that the Children will not suffer irreparable harm if the "bond of familiarity" that they share with Mother is severed. Further, the Children are in desperate need of permanency. Preserving Mother's parental rights will merely prolong the instability that the Children have experienced throughout their lives.

While the record indicates that the Children do not presently reside in pre-adoptive foster homes, our Supreme Court has instructed that the lack of a pre-adoptive resource does not necessarily preclude the termination of parental rights. *See T.S.M.*, *supra* at 269 (explaining that, while parental rights generally should not be terminated in the absence of a pre-adoptive

resource, "termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home"). Further, while it is true that terminating Mother's parental rights may impair the Children's ability to maintain a relationship with each other, it was for the orphans' court, not this Court, to weigh that consideration against the other evidence presented in this case. It was proper for the court to conclude, given the facts of the instant matter, that the Children's need for permanency outweighs any emotional harm they may suffer by remaining in separate foster homes. *See C.D.R.*, *supra*.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Mother's parental rights. *See T.S.M.*, *supra* at 267. Accordingly, we affirm the orphans' court's November 30, 2015 decrees.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016