J-A04016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.H.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| S.E.W. | |
| Appellee | No. 2256 EDA 2016 |

Appeal from the Order Entered June 14, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2015-29053

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED APRIL 11, 2017**

S.H.W. ("Mother") appeals from the June 14, 2016, custody order as to the parties' children, Br.W. (born 2002), C.W. (born 2005), and Bl.W. (born 2005) (collectively, "the Children").  Upon careful review, we affirm.

S.E.W. ("Father") and Mother (collectively, "Parents") were married on September 30, 2001.  N.T., 6/7/16, at 7.  Prior to July 2008, Parents and the Children lived in Tokyo, Japan, *id.* at 13, where the Parents had "various forms of childcare help, a babysitter or an *au pair*."  *Id.* at 16.  When asked for more details about the childcare assistance hired in Tokyo, Mother testified:

> [T]hey were not my nannies. . . . I did not have nannies.  The [C]hildren had assistance.  We had assistance in the home. . . . Prior to having [C.W. and Bl.W.], which was in 2005, we may

---

[*] Retired Senior Judge assigned to the Superior Court.

have had one person full time. . . . From time to time, we may have had two people helping.

*Id.* at 122-24.

In July 2008, Mother and the Children moved from Tokyo into the martial residence in Haverford, Pennsylvania, and they continue to reside there. N.T., 6/7/16, at 7. Father initially remained in Tokyo.

Father joined Mother and the Children in March 2009. N.T., 6/8/16, at 68-70; *see also* Trial Ct. Op., 9/21/16, at 13. Upon his return, Father was not employed and became the Children's "full time caretaker," providing for their daily needs, including taking them to and picking them up from school, transporting them to their sports and other activities, and cooking for them. Father described himself as "a graduate of the hotel school, so cooking is something that's meaningful to [him]"; for example, he made grilled cheese sandwiches, spaghetti, or noodles for the Children. N.T., 6/8/16, at 70-71. Bl.W. particularly liked cooking and baking with Father, so they started making cookies, cupcakes, noodles, ice cream, and other food together. *Id.* at 71. Mother would later allege that Father "did nothing" with the Children during this period; Father testified that Mother's claim was "patently false." *Id.* at 72.

In 2010, Father began doing some part-time consulting work, including work for his current company, which is located in New York City. N.T., 6/7/16, at 19; N.T., 6/8/16, at 73. Father travelled frequently for this job — to Florida, Hawaii, New York, and Japan. N.T., 6/7/16, at 19. Mother

asserted that, "if Father returned from New York during the week in 2010, it was too late to see or care for the Children." Mother's Reply Brief at 4.

During this time, Mother attended the University of Pennsylvania Law School, where her focus was "financial regulation and tax." N.T., 6/7/16, at 24-25. Mother already held a Master Degree in Business Administration from the Wharton School at the University of Pennsylvania, with a dual major in Finance and Statistics, and a Master's Degree in Public International Law from Oxford University. After graduation from law school in 2011, she considered moving to New York, where she had several offers of employment. Instead, at Father's request, Mother remained in Haverford, and she was hired by The Vanguard Group. *Id.* at 25.

Father again became employed full-time in May 2011, and he then travelled frequently to New York, where his employer was located. N.T., 6/7/16, at 18-19, 25; N.T., 6/8/16, at 73. When he travelled for this new employment, he remained in contact with the Children through telephone calls and e-mails. All of the Children have cellular phones. Ex. F-16.

On February 27, 2015, Mother voluntarily left her employment with The Vanguard Group, because she did not wish to travel. N.T., 6/7/16, at 24, 26, 121-22. She searched for a new job, but did not send any applications to law firms in the Philadelphia area, even though she had passed the Pennsylvania bar exam.

On November 3, 2015, Parents separated. N.T., 6/7/16, at 7. Mother alleges that, since the separation, Father has been "liv[ing] in New York City hotels." Compl. in Divorce at 11 ¶ 15. Mother later testified:

Q    Where does [Father] currently reside?

A    Currently, he resides in New York. He has been living in hotels -- different hotels every night for a number of years.

Q    [O]ther than the marital residence, does he have a permanent home here in Pennsylvania?

A    No.

Q    During his custodial time since November, where does he go with the kids?

A    Since November on his custodial every other weekend, he has taken the kids to a hotel in New York City, a hotel in the Philadelphia area, to a weekend-only rental in Haverford, and most recently to the Crown Plaza West Philadelphia on his Thursday with [Br.W.], and to a camping area in Maryland with all three kids.

N.T., 6/7/16, at 90.

On February 23, 2016, the Parents entered into a stipulation for entry of a custody order ("Custody Stipulation"), in which they agreed that the Children would spend every other weekend with Father from Friday until Sunday and that on Thursdays Father would spend custodial time with one of the Children on a rotating basis. Custody Stipulation, 2/23/16, at 3 ¶ 3.a.

On April 12, 2016, Mother filed an Emergency Petition requesting permission for her to relocate to Bethesda, Maryland[1] ("Relocation Petition"). Mother alleged that she had been offered her "dream job" in Maryland, for "the highest salary [she has] ever been offered," $170,400. N.T., 6/7/16, at 38-39, 85. On May 16, 2016, Father filed an answer that objected to the proposed relocation.

On June 7 and 8, 2016, the trial court held hearings on the Relocation Petition. During the hearings, Mother conceded that if she were permitted to relocate to Maryland with the Children, Father's alternating Thursday custodial time would be "difficult." N.T., 6/7/16, at 55. She did not provide a proposed revised custody schedule to the court, and, when asked what she would suggest, Mother said that she "intended" to be "as flexible as possible" and was "hoping that we can speak about it and come to an agreement." *Id.* at 54-55. She added that there "could be an opportunity in the summer" for Father to spend more time with the Children. *Id.*

Father testified that he was looking to purchase a home in the Philadelphia area, because "it's my home" as well as being the Children's home. N.T., 6/8/16, at 110. Father testified that "we have anchored ourselves there." *Id.* The Children are currently enrolled in private schools in Pennsylvania. Order, 7/7/16, at 2. Father further testified that he would

_____

[1] During oral argument before this Court on February 14, 2016, Mother clarified that she hoped to move to Chevy Chase, Maryland, which is about two miles away from Bethesda.

- 5 -

be able to adjust his work schedule to accommodate the Children's needs if they were to remain in Pennsylvania. Trial Ct. Op., 9/21/16, at 14-15 (citing N.T., 6/8/16, at 124). He said his employer would be flexible with his work and travel schedules and be "very comfortable" with Father "working out of Philadelphia," as opposed to New York. N.T., 6/8/16, at 152-53.

Father claims that since he separated from Mother, he has been "hindered frequently" by Mother from taking the Children to activities that he wished to attend with them. N.T., 6/8/16, at 76. For example, he said that when he wanted to take Bl.W. to a movie, Mother told him "absolutely not." *Id.* He stated that Mother also would not agree to weekend trips and once refused to let him take Br.W. on a planned trip to Father's cousin's home on Independence Day. *Id.* at 76-77. Father also testified about how Mother would interfere when the Children were allowed to be with him:

> And while I was with [Bl.W. and C.W.] up in the Allegheny River, [Mother] called them incessantly, she told me on the phone she never wanted to be away from the [C]hildren again and that she was very, very upset by this occurrence.
>
> And she called the [C]hildren to tell them that she had taken [Br.W.] to the shore and that they were riding roller coasters and eating popcorn and it was so much fun there. And that really hurt.

*Id.* at 77. Father introduced e-mails between himself and Mother that documented his "plea to be active in scheduling the [C]hildren's activities." Ex. F-11; N.T., 6/8/16, at 78.

The trial court also interviewed the Children *in camera*. Br.W. confirmed that the Children consistently spend every other weekend with Father from Friday until Sunday and that on Thursdays Father spends custodial time with each child on a rotating basis. N.T. Interview of Br.W., 6/8/16, at 4, 10-12. Br.W. "[did]n't mind" changing that custody arrangement, "as long as [he] g[o]t to see [his] mom and [his] dad," but he also expressed that "it would be kind of cool to see [his] dad more." *Id.* at 21-23. C.W. told the trial court, "I don't want to move to Maryland." N.T. Interview of C.W., 6/8/16, at 11. Bl.W. said that she "wouldn't mind" moving to Maryland but that she would like to see Father "a little bit more." N.T. Interview of Bl.W., 6/8/16, at 12.

On June 14, 2016, the trial court denied Mother's relocation petition. On June 21, 2016, Mother sent a letter to the trial court, requesting that the court "submit its opinion under the relocation factors" before July 14, 2016. On July 7, 2016, the trial court complied. The court's decision states:

> The [c]ourt considered the relocation factors as set forth in 23 Pa.C.S.A. §5337(h) as well as the best interests of the [C]hildren in considering [Mother]'s petition for relocation. . . . The [c]ourt has considered the best interests of the [C]hildren by considering the [C]hildren's current schedule and the importance of both [P]arents maintaining an active role in the growth and development of the [C]hildren. The [c]ourt finds that both [P]arents are able to attend to the daily physical, emotional, developmental, educational needs of the [C]hildren. Neither parent presented any persuasive evidence that the other parent is incapable of caring for the [C]hildren, or providing for their needs.

Based on the evidence presented at the June 7 and June 8, 2016 hearings, the [c]ourt found that based on the ages and needs of the [C]hildren, a relocation to Maryland would not be in their best interests. The [C]hildren, [Br.W., C.W.,] and [Bl.W.] have lived in Pennsylvania since July of 2008. [C.W.] and [Bl.W.] have attended their current schools since they were in first grade. [Br.W.] has been at his school since kindergarten. All three [C]hildren are in private school in Pennsylvania. There was testimony presented that the [C]hildren are doing well in school, and are happy. All three children are involved in numerous extracurricular activities. Plaintiff/Mother (hereinafter "Mother") testified that she was "hoping to move to Bethesda" and offered evidence as to the public school district in that area. There was no persuasive evidence presented at the hearings that the quality of the [C]hildren's education would improve, or remain consistent for that matter, if they were to relocate to Maryland.

There was also no persuasive evidence that the relocation would enhance the general quality of life for the [C]hildren financially or emotionally.

Under the current custody schedule, Defendant/Father (hereinafter "Father") has partial physical custody of the [C]hildren every other weekend from Thursday at 5:00 p.m. until Sunday at 5:00 p.m. The [c]ourt found that a relocation of the [C]hildren to Maryland would be detrimental to Father's ability to exercise his periods of partial physical custody since the [C]hildren would be attending school in Maryland, thereby making Father's overnight custody on Thursdays difficult if not impossible. Father also testified that if the [C]hildren were to relocate, he would not be able to actively participate in their weekday activities in the manner at which he has done so.

Mother testified as to her educational and employment background. Based on her education and experience, the [c]ourt did not find Mother's argument that she is unable to find suitable employment in the Pennsylvania, New Jersey, or New York area to be persuasive. Although acceptance of the specific job in Maryland may provide Mother with a financial benefit, Mother did not prove that the job in Maryland is the only opportunity she will have for similar or even satisfactory employment opportunities. The court found that based on the testimony at the hearings, Mother's specific employment opportunity does not

- 8 -

outweigh the [C]hildren's need for stability and continuity in their lives, nor does it outweigh the importance of Father maintaining an active role in the [C]hildren's lives.

Based on the testimony presented at the hearings, the [c]ourt also has concerns as to Mother's willingness and ability to promote the [C]hildren's relationship with Father if they were to move to Maryland.

The preference of the [C]hildren as to a possible relocation was also considered by the [c]ourt.

There was testimony offered that Mother wants to move to Maryland to "start a new life, farther away." The [c]ourt does not find that Mother's desire to start a new life elsewhere outweighs the need for continuity and stability in the [C]hildren's lives and the children's proximity to their father.

Order, 7/7/16, at 1-3.

On July 12, 2016, Mother filed a timely notice of appeal to this Court.[2] On August 17, 2016, Mother responded to an order by this Court for her to show cause why the appeal was taken from an order that is final and appealable. On August 23, 2016, this Court discharged the rule, but stated that this decision was "not a final determination as to the propriety of the appeal." A custody order is final and appealable "only after the trial court

_____

[2] Mother did not file a Pa.R.A.P. 1925(b) statement concomitantly with her notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i) for cases of this type – *i.e.*, Children's Fast Track ("CFT"). The trial court ordered Mother to file her statement within 21 days, and Mother complied. Father does not claim that he was prejudiced by the late filing of Mother's statement, and that late filing does not require dismissal of her appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (failure to file a 1925(b) statement concomitantly with a CFT appeal will not result in dismissal where there is substantial compliance and no prejudice, since failure to file the statement is a violation of a procedural rule and not an order of court).

- 9 -

has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties." *G.B. v. M.M.B.*, 670 A.2d 714, 715 (Pa. Super. 1996) (*en banc*). Here, the trial court had completed its hearings on the merits prior to issuing the order of June 14, 2016, and its order resolved the dispute regarding Mother's relocation petition. Thus, we now hold that the order of June 14, 2016, is both final and appealable. We therefore proceed to the merits of the case.

Mother raises the following issues for our review:

1. Did the trial court abuse its discretion in denying Appellant-Mother's request for relocation by failing to properly consider all of the relocation factors enumerated under 23 Pa. C.S.A. § 5337(h) and failing to delineate all of its reasons for denying Mother's request for relocation?

2. Did the trial court abuse its discretion [(A)] by failing to properly consider the lack of involvement and presence of Appellee-Father in the [C]hildren's lives under 23 Pa. C.S.A. § 5337(h)(1) and [(B)] by finding that "both parents are able to attend to the daily physical, emotional, developmental, educational needs of the children" when Appellee-Father admitted that he is somewhere other than Pennsylvania 76% of the time?

3. Did the trial court abuse its discretion by failing to consider other suitable custody arrangements, as is required under 23 Pa. C.S.A. § 5337(h)(3), before concluding that the [C]hildren's relocation to Maryland would be "detrimental to Appellee-Father's ability to exercise his periods of partial physical custody since the [C]hildren would be attending school in Maryland, thereby making Appellee-Father's overnight custody on Thursday difficult if not impossible"?

4. Did the trial court abuse its discretion by improperly crediting Appellee-Father's testimony that, if the [C]hildren were to relocate, "he would not be able to actively participate in their weekday activities in the manner at which he has done so"

- 10 -

because Appellee-Father's assertion that he has heretofore "actively participated" in the [C]hildren's weekday activities is not supported by the record?

5.  Did the trial court abuse its discretion by failing to properly consider whether relocation would enhance the general quality of life of Appellant-Mother, both financially and emotionally, under 23 Pa. C.S.A. § 5337(h)(6)?

6.  Did the trial court abuse its discretion by concluding that Appellant-Mother failed to prove that she is unable to obtain suitable employment in Pennsylvania, New Jersey, and/or New York because this conclusion is not supported by the record?

7.  Did the trial court abuse its discretion by doubting Mother's willingness and ability to promote the [C]hildren's relationship with Appellee-Father if the [C]hildren relocate to Maryland because such a concern is not supported by the record and ignores the fact that Appellee-Father willingly spends the majority of his time outside of Pennsylvania and away from the [C]hildren?

8.  Did the trial court abuse its discretion by concluding that there was no persuasive evidence presented at the hearings that the quality of the [C]hildren's education would improve, or remain consistent, if they were to relocate to Maryland because this conclusion is not supported by the record?

9.  Did the trial court abuse its discretion by finding that the [C]hildren are involved in numerous extra-curricular activities in Pennsylvania and failing to consider the evidence that similar activities are available in Maryland?

10. Did the trial court abuse its discretion by failing to consider under 23 Pa. C.S.A. § 5337(h)(7) the ways in which the [C]hildren's relocation to Maryland, a short distance from Washington D.C., would enhance the quality of life for the children by providing them with additional extra-curricular activities, a gainfully employed Mother with the federal government, and the ability to further foster relationships with family and close family friends in the Maryland/Washington D.C. area?

- 11 -

11. Did the trial court abuse its discretion by concluding that the need for continuity and stability in the [C]hildren's lives and the [C]hildren's proximity to their [F]ather outweighs Appellant-Mother's need to relocate because this conclusions is not supported by the record, as the [C]hildren are not in close proximity to Father while living in Pennsylvania and there is no evidence that the Children's relocation to Maryland would be detrimental to them or otherwise affect their relationship with Appellee-Father?

Mother's Brief at 4-7 (answers omitted).

We begin by acknowledging our scope and standard of review in custody cases:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)).

When considering whether to grant relocation, the court must analyze the ten factors set forth in the relocation provision of the Custody Act, 23 Pa.C.S. § 5337:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following

- 12 -

factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h); *see* Mother's Brief at 4-7 ¶¶ 1-11. Mother's 11 issues generally amount to an attack on the trial court's assessment of these factors. Indeed, Mother's first issue consists of a claim that the trial court failed properly to consider all of the factors when it rendered its decision. The trial court said that it did consider all of the factors, both in its order dated July 7, 2016, and in an expanded analysis in its opinion dated September 21, 2016. We shall address Mother's 11 issues by referencing each of the relocation factors *seriatim*.

**(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**[3] Parents do not dispute that Mother has a strong relationship with the Children. ***See, e.g.,*** Mother's Brief at 26; Father's Brief at 25, 28. The trial court found, however, that the Children also have a strong relationship with Father.

The trial court stated: "Father testified as to his involvement in the day to day lives of the [C]hidren. . . . Father stated that he has helped the [C]hildren with their homework, cooked them meals, [and] attended their extracurricular activities[.]" Trial Ct. Op., 9/21/16, at 13; ***see*** N.T., 6/8/16, at 68-73. The court noted that Father has had physical custody of the

---

[3] The first part of Mother's second issue relates to this first relocation factor. ***See*** Mother's Brief at 4 ¶ 2(A).

Children every other weekend and spent rotating Thursdays with each of the Children separately. Custody Stipulation, 2/23/16, at 3 ¶ 3.a.; N.T., 6/7/16, at 55; N.T. Interview of Br.W., 6/8/16, at 4, 10-12. Additionally, between March 2009 and May 2011, Father was the Children's "full time caretaker," because he was not employed during that time. N.T., 6/8/16, at 73. During this period, Father actively participated in the Children's sports and other extracurricular activities and provided for their daily needs. Trial Ct. Op., 9/21/16, at 13 (citing N.T., 6/8/16, at 68-70). Father testified that "Mother's claim that he 'did nothing' with the [C]hildren during that time is 'patently false.'" *Id.* (quoting N.T., 6/8/16, at 72).

The trial court concluded that the testimony at the hearings and the child interviews "demonstrated to the court" that "Father shares a close, warm, and positive relationship with the [C]hildren and has done so since their births." Trial Ct. Op., 9/21/16, at 13. The trial court's findings "are supported by competent evidence of record." *D.K.*, 102 A.3d at 478. See N.T., 6/8/16, at 68-73. Because the record substantiates these findings, we hold that the trial court did not abuse its discretion and properly considered "the nature, quality, extent of involvement and duration" of the Children's relationship with Father, pursuant to the first relocation factor under the Custody Act, 23 Pa.C.S. § 5337(h)(1).

**(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical,**

**educational and emotional development, taking into consideration any special needs of the child.**[4]  In its order of July 7, 2016, the trial court asserted:

> The Court finds that both [P]arents are able to attend to the daily physical, emotional, developmental, educational needs of the [C]hildren.  Neither parent presented any persuasive evidence that the other parent is incapable of caring for the children, or providing for their needs.

Order, 7/7/16, at 1.  The trial court reiterated this conclusion in its opinion of September 21, 2016:

> Mother presented no credible evidence at the hearings that [Appellee] Father is unable to attend to the daily physical, emotional, developmental, and educational needs of the children due to his employment responsibilities, or for any other reason. She also did not present any credible evidence that [Appellee] Father's work schedule constitutes "a lack of involvement and presence" of [Appellee] Father in the children's lives.  There was no persuasive evidence that [Appellee] Father's extensive travel for his job which occurred during the course of the parties' marriage was detrimental to the health, safety, or emotional welfare of the children.

Trial Ct. Op., 9/21/16, at 14.  With regard to issues of credibility and weight of the evidence, we must defer to the trial court, which viewed and assessed the witnesses, including Father, first-hand.  *See D.K.*, 102 A.3d at 478.

Moreover, the trial court's conclusions are supported by the evidence of record.  *See D.K.*, 102 A.3d at 478.  The evidence supports the trial court's finding that "[t]he [C]hildren were well cared for by both [P]arents,

---

[4] This second relocation factor corresponds to the second part of the second issue raised by Mother on appeal.  *See* Mother's Brief at 4 ¶ 2(B).

and by hired caregivers." Trial Ct. Op., 9/21/16, at 14. *See* N.T., 6/7/16, at 11, 16; N.T., 6/8/16, at 70-72. Father testified that even when he was travelling for work, he stayed connected to the Children through e-mails and phone calls. As noted above, between March 2009 and May 2011, Father was the Children's "full time caretaker." Father also testified that he would be able to adjust his work schedule to accommodate the Children's needs if they were to remain in Pennsylvania. Trial Ct. Op., 9/21/16, at 14-15 (citing N.T., 6/8/16, at 124).

The trial court concluded: "For the above stated reasons, the [trial] court did not err or abuse its discretion in finding that Father is able to care for the [C]hildren on a daily basis and meet their needs, and finding that he has been an active participant in their upbringing in care." Trial Ct. Op., 9/21/16, at 15. We agree that the trial court did not abuse its discretion and that it did properly consider the Children's physical, educational, and emotional development, pursuant to the second relocation factor under the Custody Act, 23 Pa.C.S. § 5337(h)(2).

**(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances**

**of the parties.**[5]  Mother contends that "the trial court improperly credited Father's testimony that 'he would not be able to actively participate in their weekday activities in the manner in which he has done so'" and argues that the trial court's finding "is not supported by the record."  Mother's Brief at 39; *see also id.* at 5 ¶ 4.  Father answers that his "custody time and involvement in the Children's extra-curricular activities would be impeded if the Children lived in Maryland," because "it would be difficult, if not impossible, for Father to continue his Thursday custodial time if the Children were attending school in Maryland."  Father's Brief at 30.

The trial court observed:

At the hearings, [Father] testified as to his involvement in the day to day lives of the [C]hildren.  [Father] stated that he has helped the [C]hildren with their homework, cooked them meals, attended their extracurricular activities, and since the parties' separation, he has had physical custody of the [C]hildren every other weekend, and he spends alternate Thursdays with each child separately.  Furthermore, between March, 2009 and May, 2011, he was able to be a "full time caretaker" for the [C]hildren since he was not employed during that time.  N.T.[, 6/8/16,] at 73.  During this period [Father] actively participated in the [C]hildren's sports and other extracurricular activities, and provided for their day to day needs.  [*Id.*] at 68-70.  He stated that [Mother's] claim that he "did nothing" with the [C]hildren during that time is "patently false".  [*Id.*] at 72. . . . Therefore the [trial] court does not find [Mother's] characterization of [Father] having a "lack of involvement or presence" in the [C]hildren's lives to be persuasive. . . .

_____

[5] This third relocation factor corresponds to the third, fourth, and eleventh issues raised by Mother and is directly referenced within her third issue. *See* Mother's Brief at 4-7 ¶¶ 3, 4, 11.

At the June 7, 2016 hearing, [Mother] conceded that if she were permitted to relocate to Maryland with the [C]hildren, [Father's] alternating Thursday custodial time with the [C]hildren would be "difficult." N.T.[, 6/7/16,] at 55. However, [Mother] did not present the court with a viable alternative to the parties' current custody schedule, nor did she present sufficient evidence for the court to fashion an alternative custody schedule which would provide [Father] with comparable custodial time with the [C]hildren. Instead, when asked what her proposed custodial schedule would be, [Mother] testified that she "intended" to be "as flexible as possible", and that she was "hoping that we can speak about it and come to an agreement." [Mother] also stated that there "could be an opportunity in the summer" for [Father] to have additional custodial time with the [C]hildren. [*Id.*] at 54-55.

Trial Ct. Op., 9/21/16, at 13, 15.

Although Mother protests that "the trial court improperly credited Father's testimony," we "must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *D.K.*, 102 A.3d at 478. "In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *Id.*

Here, since the trial court's finding that it would be unfeasible to preserve the relationship between Father and the Children was supported by competent evidence of record, as demonstrated by its abundant citations to the notes of testimony, we cannot disturb the trial court's factual determinations and cannot substitute new credibility determinations for those of the trial court. *See* 23 Pa.C.S. § 5337(h)(3); *D.K.*, 102 A.3d at

478. Hence, we accept the trial court's "credit[ing]" of Father's testimony and conclude the trial court did not abuse its discretion. ***See id.***

**(4) The child's preference, taking into consideration the age and maturity of the child.** The trial court considered the preferences of the Children. Order, 7/7/16, at 3. C.W., who was born in 2005, specifically wanted to remain in Pennsylvania and did not wish to relocate to Maryland. N.T. Interview of C.W., 6/8/16, at 11. Bl.W., who was also born in 2005, "wouldn't mind" moving to Maryland but still wished to see Father "a little bit more." N.T. Interview of Bl.W., 6/8/16, at 12. Br.W., who was born in 2002, also expressed no preference but likewise would prefer to see Father more often. N.T. Interview of Br.W., 6/8/16, at 21-23. The record demonstrates that the trial court properly considered this factor in denying Mother's relocation request.

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**[6] The trial court stated, "There was . . . evidence presented that starting approximately a year ago, [Mother] 'frequently hindered' [Father] from taking the [C]hildren to their activities or spending time with the [C]hildren." Trial Ct. Op., 9/21/16, at 13 (citing N.T., 6/8/16, at 76-78). The record supports this statement. For example, Father testified about

---

[6] The Mother's seventh issue relates to this fifth relocation factor. ***See*** Mother's Brief at 5 ¶ 7.

barriers erected by Mother when he wanted to take Bl.W. to a movie or to visit Father's cousin, and he told of interference by Mother during a river trip with Bl.W. and C.W.

The court also found that relocation would hinder Father's ability to spend time with the Children. **See** Trial Ct. Op., 9/21/16, at 17 (requiring Father to travel on "a weekly basis in order to exercise his physical custodial time is [not] feasible" or "to rent a hotel room or a house in order to spend time with his children is unnecessarily burdensome"). We have no ground to disturb the trial court's findings relating to this factor.

**(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**[7] "In reaching a decision in this matter, the [trial] court took into consideration [Mother's] testimony as to the financial and emotional benefits she would gain by relocating to Maryland." Trial Ct. Op., 9/21/16, at 18. The trial court found that if Mother is permitted to relocate, she would earn the highest salary that she has ever received and have her "dream job." **Id.** These findings of the trial court "are supported by competent evidence of record." **D.K.**, 102 A.3d at 478. **See** N.T., 6/7/16, at 38-39, 85.

_____

[7] This sixth relocation factor corresponds to the fifth and sixth issues raised by Mother and is directly referenced within the fifth issue. **See** Mother's Brief at 5 ¶¶ 5-6.

However, the trial court was concerned that Mother actively searched for employment opportunities in the Washington, D.C. area prior to obtaining Father's agreement to a relocation of the Children or gaining the court's permission for a relocation. Trial Ct. Op., 9/21/16, at 18. The trial court noted that Mother's employment offer did not come to her independently or as a promotion by an existing employer. *Id.* "It is one which she pursued of her own volition, knowing that it would require relocation and disruption in the [C]hildren's lives." *Id.*

We acknowledge that Mother testified there was no possibility of maintaining her employment in Pennsylvania or of receiving a salary as high as the one she was being offered in Maryland, despite her educational credentials. N.T., 6/7/16, at 24, 38-39, 85, 120-22. However, the trial court observed that Mother was not qualified as an expert and provided no supporting evidence for these assertions, and the trial court doubted their accuracy. Order, 7/7/16, at 2 (the trial court "did not find . . . Mother's argument . . . to be persuasive"); Trial Ct. Op., 9/21/16, at 6 (same), 18 ("the [trial] court does not find [Mother's] testimony on this point to be credible"). With regard to issues of credibility and weight of the evidence, we must defer to the trial court, which viewed and assessed the witnesses, including Mother, first-hand. See *D.K.*, 102 A.3d at 478. Mother has not established that the trial court abused its discretion when it found that she refused to consider any other options, such as applying to positions with law

firms in Philadelphia. Trial Ct. Op., 9/21/16, at 20-21. **_See also_** N.T., 6/7/16, at 121.

We conclude that the trial court did not abuse its discretion and properly considered how the proposed relocation would enhance the general quality of Mother's life, pursuant to the sixth relocation factor under the Custody Act, 23 Pa.C.S. § 5337(h)(6). The trial court considered the benefit that the relocation would provide to Mother, but ultimately concluded that the benefit was outweighed by other factors and that Mother had not proven to the court's satisfaction that she could not also derive significant benefits if she more actively searched for suitable employment in the Philadelphia area.

**(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**[8] The Children have attended their current private schools in Pennsylvania since they were in kindergarten or first grade. Order, 7/7/16, at 2. The Children are succeeding academically and are happy in their respective schools. **_Id._**; Trial Ct. Op., 9/21/16, at 6. The trial court stated:

> [Mother] testified that she was "hoping to move to Bethesda" and offered evidence as to the public school district in that area. There was no persuasive evidence presented at the hearings that the quality of the children's education would improve, or remain consistent for that matter, if they were to relocate to Maryland.

_____

[8] This seventh relocation factor corresponds to the eighth, ninth, and tenth issues raised by Mother and is directly referenced within the tenth issue. **_See_** Mother's Brief at 6 ¶¶ 8-10.

Order, 7/7/16, 2; Trial Ct. Op., 9/21/16, at 6. With regard to issues of credibility and weight of the evidence, we must defer to the trial court, which viewed and assessed the witnesses first-hand. **See D.K.**, 102 A.3d at 478.

In addition to considering the Children's schools, the trial court also examined the Children's opportunities for extracurricular activities. Trial Ct. Op., 9/21/16, at 24. The Children are involved in numerous activities in Pennsylvania, including music lessons, sports, trips to museums, and other pastimes with their friends. **Id.** Although Mother hopes for similar opportunities in Maryland, the court found that Mother "did not prove that the activities [available to the Children] in Maryland would 'enhance' the [C]hildren's lives as contemplated by" 23 Pa.C.S. § 5337(h)(7). **Id.** Thus, the trial court did not abuse its discretion when considering this seventh relocation factor when it held that "[s]imply replicating the [C]hildren's existing extracurricular activities in Maryland does not necessarily demonstrate that their lives would be improved by relocation to Maryland." Trial Ct. Op., 9/21/16, at 24.

The trial court concluded that, based on the testimony, Mother's specific employment opportunity and desire to start a new life elsewhere did not outweigh the Children's need for stability and continuity or the importance of Father maintaining an active role in the Children's lives. **See** Order, 7/7/16, at 2-3; Trial Ct. Op., 9/21/16, at 6-7. Based upon our review of the record, we hold that the trial court did not abuse its discretion and

properly considered whether the relocation will enhance the general quality of the Children's lives, pursuant to the seventh relocation factor under the Custody Act, 23 Pa.C.S. § 5337(h)(7).

**(8) The reasons and motivation of each party for seeking or opposing the relocation.** The trial court found that Mother's reason for seeking relocation was primarily for her own economic benefit. Mother did not otherwise articulate how the trial court abused its discretion in concluding that the Children's lives would not be enhanced by the relocation and that the Children's stability would be undermined by Mother's focus on her "dream job." N.T., 6/7/16, at 85; Trial Ct. Op., 9/21/16, at 18.

Father opposed the relocation because the Children would become less accessible to him. This motivation was unequivocal and understandable. *See* Order, 7/7/16, at 2; Father's Brief at 30.

**(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.** According to the trial court and the parties' briefs, neither parent made allegations of abuse.

**(10) Any other factor affecting the best interest of the child.** The trial court did not identify any factor other than those discussed above that is relevant to the best interests of the Children in the context of relocation, and Mother has not raised any other factors affecting the Children's best interests. Based upon our review of the record, we hold that

the trial court did not abuse its discretion when considering the Children's bests interests.

In sum, our review of the record and the trial court's order and opinion convinces us that, contrary to Mother's contentions, the trial court properly considered the ten factors set forth in 23 Pa.C.S. § 5337(h) when ruling on Mother's relocation request. The trial court's well-reasoned conclusions were based on the evidence submitted, as demonstrated by the trial court's copious citations to the record and as supported by our review. We find no abuse of discretion in the trial court's assessment of these factors. We therefore affirm the trial court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017