J-A07028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.L., A MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1693 WDA 2016 |

Appeal from the Order October 3, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No:  63-15-1173

BEFORE:   OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 26, 2017**

J.S. ("Father") appeals from the October 3, 2016 order that granted the petition of Washington County Children and Youth Social Services Agency ("CYS") for the involuntary termination of his parental rights to the female child, C.L., born in September of 2014.[1]  Upon careful review, we affirm.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] On July 26, 2016, the orphans' court involuntarily terminated the parental rights of L.D. ("Mother").  Mother did not file a notice of appeal.

[2] We observe that the Guardian *ad litem* ("GAL") filed a brief in support of the order involuntarily terminating Father's parental rights.

The orphans' court set forth the following factual findings, in relevant part, in its opinion accompanying the subject order.

On September 6, 2014, C.L. was placed with CYS. She was adjudicated dependent on September 15, 2014. [Father] has been incarcerated since the September 14, 2014 adjudicatory hearing.[3] . . .

[Father] has a criminal history dating back over a decade involving serious violations with minor children in Allegheny and Fayette County. In 2003, [Father] was charged with felony aggravated indecent assault, misdemeanor indecent assault without the consent of others and corruption of minors. [Father] pled guilty to the charges of indecent assault, indecent assault without the consent of others, and corruption of minors and served a full nine year sentence. The victim of the incident(s), which gave rise to these criminal charges, was the minor child of [Father's] girlfriend. [Father] is a Tier III Sex Offender.[4]

On May 15, 2014, [Father] was charged with multiple counts of interference with the custody of the children, conspiracy of interference with the custody of children and concealment of the whereabouts of a child when he helped [Mother's] children . . . escape from the Westmoreland County foster home where they were placed following a shelter care hearing and transporting them to neighboring Fayette County.[5] [Father] pled guilty to four charges of concealment of the whereabouts of a child and is currently incarcerated at SCI [State Correctional Institution] -

_____

[3] The record reveals that Father was incarcerated at the time of C.L.'s birth up through the time of the subject proceedings, and that C.L. has never met him. N.T., 7/22/16, at 11, 13.

[4] The CYS caseworker, Dawn Smith, testified that, "in 2013, [Father] failed to comply with registration requirements in regards to the Megan's Law." N.T., 7/22/16, at 10.

[5] Father's criminal charges related to his actions with respect to Mother's three older minor daughters, who are C.L.'s half-sisters. The older children were placed together in a foster home in May of 2014, prior to C.L.'s birth. N.T., 7/22/16, at 10.

Somerset. He was sentenced to a minimum of two years and a maximum of four years.[6] In August 2016, [Father's] parole request was denied, and he will appear before the parole board again in May 2017.

As a result of the dependency of [C.L.], [Father] was court[-] ordered to participate in a Drug and Alcohol evaluation and follow through with any recommended treatment, participate in a Mental Health evaluation, complete a psycho-sexual assessment and follow all recommendations. During the course of the dependency action, [Father] did not provide any documentation that he had participated in any of the court ordered services. As late as March 2, 2016, the Dependency Court found that [Father] had made no progress towards alleviating the circumstances which necessitated the original placement. . . .

Trial Court Opinion, 10/3/16, at 2-3 (citations to record omitted).

On September 30, 2015, CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). A hearing occurred on July 22, 2016, during which CYS presented the testimony of its caseworker, Dawn Smith, and the Court Appointed Special Advocate ("CASA"), Linda Silvas. Father testified on his own behalf *via* video telephone conferencing from SCI - Somerset, and he presented the testimony, *via* telephone, of John Shearer, his prison counselor. Finally, the GAL presented the testimony of H.W., C.L.'s foster father, a pre-adoptive resource, who, along with his wife, is also the foster resource of C.L.'s half-sisters. N.T., 7/22/16, at 99.

_____

[6] Father was sentenced by order dated December 16, 2014. N.T., 7/22/16, at 19.

By order dated October 3, 2016, and entered on October 4, 2016, the orphans' court involuntarily terminated Father's parental rights. Father filed a notice of appeal on November 3, 2016.[7] The orphans' court issued its Rule 1925(a) opinion on November 22, 2016.

On appeal, Father presents the following issues for our review:

1. Did the [orphans'] court err in terminating Father's parental rights where [CYS] failed to prove by clear and convincing evidence that Father evidenced a settled purpose of relinquishing parental claims to the child and failed to prove that Father refused or failed to perform parental duties?

2. Did the [orphans'] court err in terminating Father's parental rights where [CYS] failed to prove by clear and convincing evidence that the child was without essential parental care, control or subsistence necessary for her physical or mental well-being due to Father's repeated and continued incapacity, abuse, neglect or refusal?

Father's Brief at 2.

We review Father's appeal according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

---

[7] In contravention of Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b), Father did not file a concise statement of errors complained of on appeal concurrently with his notice of appeal. However, Father filed a concise statement on November 16, 2016. Because neither CYS nor the GAL claims prejudice as a result of Father's procedural violation, we will not quash or dismiss his appeal. **See In re K.T.E.L.**, 983 A.2d 745 (Pa. Super. 2009).

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, in the statement of questions involved in his brief, Father's first issue relates to Section 2511(a)(1), and his second issue relates to Section 2511(a)(2). *See* Father's Brief at 2, *supra*.

With respect to the Section 2511(a) challenges, this Court needs only agree with the decision of the orphans' court as to any one subsection in order to affirm the termination of parental rights. *See In re B.L.W.*, 843

- 5 -

A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the court properly terminated Father's parental rights pursuant to Section 2511(a)(2), which provides as follows.[8]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .

23 Pa.C.S.A. § 2511(a)(2).

> This Court has stated as follows.
>
> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Further, we have stated, "[t]he grounds for termination due to

---

[8] Based on this disposition, we need not consider Father's first issue relating to Section 2511(a)(1).

parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

As noted above, Father argues that CYS did not prove by clear and convincing evidence that his conduct warranted termination under Section 2511(a)(2).  Father argues that he "remedied many of the conditions causing the child to be without the essential parental care necessary for her well-being."  Father's Brief at 9.  Specifically, Father asserts that he participated while incarcerated in "a sex offenders program and violence prevention"; "psychological counseling at SCI"; and he "attempted to participate in a parenting program." *Id.* at 10 (citations to record omitted).  In short, Father asserts, "he has been rehabilitated . . . and has learned from his mistakes." *Id.* (citations to record omitted).  Further, Father asserts, "[h]e is ready, willing and able to parent C.L." *Id.* at 8 (citation to record omitted).  We disagree.

It is well-established that incarceration is not "a litmus test" for termination of parental rights. *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012).  However, the *S.P.* Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without

essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828.

Assuming Father is given credit for time served before his sentencing date, he would have had approximately twenty-two months remaining on his maximum sentence by the time of the subject proceedings, at which time C.L. will be nearly four years old. Further, the orphans' court concluded that Father's "road to recovery and rehabilitation will not end when he is released from incarceration." Trial Court Opinion, 10/3/16, at 9. The testimonial evidence supports this finding. Indeed, even if Father is released on parole, he will be unable to immediately provide "essential parental care, control or subsistence" to C.L. Father testified on inquiry by the orphans' court as follows:

> [Q.] [W]hat would be your plan in the event you are released from prison with regard to parenting [C.L.][?]
>
> [A.] My plan is to first get to have a bonding relationship with [C.L.].
>
> [Q.] How are you going to do that?
>
> [A.] By visitation days, getting to know her when I'm supposed to be there, and if I'm able to have phone contact with her - - helping her to hear my voice. Supporting her with everything that I could possibly support her with and taking care of her financially as well as emotionally.
>
> . . .
>
> [Q.] What is the plan for employment whenever you get out of prison?

[A.] I am working for Boyco (phonetic) Construction, which is my deceased mother's boyfriend's company. He offered me a job. He told me that, you know, he is willing to - - being that I don't have a place to live except wherever I could find - - and I contacted him, and he told me he is willing to get me a place to live, a job, and help me get situated and get back on my feet so that I could take better care of my family.

N.T., 7/22/16, at 90-91. Based on the foregoing, Father acknowledged that he will be unable to immediately provide essential parental care to C.L. upon his release from prison.

In addition, the CYS caseworker, Dawn Smith, testified that she has not received any documentation demonstrating that Father participated in and/or completed any of the court-ordered services, described above, while incarcerated. N.T., 7/22/16, at 32. As such, we agree with the orphans' court that "the record contains no credible or persuasive evidence that Father has remedied his parental [in]capacity." Trial Court Opinion, 10/3/16, at 9.

C.L. has resided all of her life in a foster home, along with her older half-sisters, where she remains secure and stable. She will be nearly four years old when Father has served his maximum sentence, at which time Father will still be unable to provide "essential parental care, control or subsistence." We discern no abuse of discretion by the orphans' court in concluding that Father's repeated and continued incapacity has caused C.L. to be without essential parental care, control or subsistence necessary for her physical or mental well-being, and the causes of the incapacity cannot or

will not be remedied.  Thus, Father's issue on appeal fails.  ***See In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (stating that, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment").  Accordingly, we affirm the order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/26/2017