**In re K.T.E.L.**

**Appeal of A.R., Mother.**

Superior Court of Pennsylvania.

Submitted July 13, 2009.

Filed Oct. 21, 2009.

Daniel Silver, Philadelphia, for appellant.

Emily B. Cherniack, Philadelphia, for appellee.

Michael E. Angelotti, Philadelphia for Dept. of Human Services, Participating Party.

Samuel Alboum, Philadelphia, for Father, Participating Party.

BEFORE: STEVENS, KELLY, and POPOVICH, JJ.

OPINION BY KELLY, J.

¶ 1 A.R. (Mother) appeals from the decree entered in the Philadelphia County Court of Common Pleas of Philadelphia, involuntarily terminating her parental rights to her child, K.T.E.L., born October 28, 2003. We affirm. In this case, we

address an issue of first impression: the disposition of an appeal in which an appellant in a case involving termination of parental rights fails to comply with Pennsylvania Rules of Appellate Procedure 905(a)(2) and 1925(a)(2), both adopted January 13, 2009. We hold that henceforth, in all children's fast track cases, the failure to file a concise statement of errors complained of on appeal **with** the notice of appeal will result in a defective notice of appeal, to be disposed of on a case by case basis.

¶ 2 Preliminarily, we address Mother's concise statement of errors complained of on appeal in light of the amendments to Rule 905 and 1925, adopted January 13, 2009 to be "effective as to appeals filed 60 days or more" thereafter. *See* Pa.R.A.P. 905, *history*; 1925, *history*. The amendments included new sub-sections applicable only to children's fast track cases. Rule 905(a)(2) provides in pertinent part: "If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) **shall** be filed **with** the notice of appeal and served in accordance with Rule 1925(b)(1)." Pa.R.A.P. 905(a)(2) (emphasis added). Rule 1925(a)(2)(i) states: "The concise statement of errors complained of on appeal **shall** be filed and served **with** the notice of appeal as required by Rule 905. *See* Pa.R.A.P. 905(a)(2)." Pa.R.A.P. 1925(a)(2)(i) (emphasis added).

¶ 3 While both rules require the contemporaneous filing of a notice of appeal and concise statement, there are no provisions defining the effect on the appellant's appeal of the failure to comply. We find however, that rule 905(a)(2) is procedural,

not jurisdictional; therefore, we are not divested of our jurisdiction by non-compliance. Instead, we find that failure to comply with rule 905(a)(2) will result in a defective notice of appeal.

■ ¶ 4 Rule 902 states in part:

Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902; *see also Commonwealth v. Alaouie*, 837 A.2d 1190, 1192 n. 2 (Pa.Super.2003). This Court has stated, "The extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the party [moving for quashal of the appeal] has suffered no prejudice." *Stout v. Universal Underwriters Ins. Co.*, 491 Pa. 601, 421 A.2d 1047, 1049 (1980). Accordingly, as there is no *per se* rule requiring quashal or dismissal of a defective notice of appeal, we hold that in the instant case and henceforth, the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to rules 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal. The disposition of the defective notice of appeal will then be decided on a case by case basis under the guidelines set forth in *Stout, supra.*[1]

---

1. We note that untimely concise statements filed in civil and criminal cases pursuant to rule 1925(b) result in the waiver of all issues. *Commonwealth v. Gravely*, 970 A.2d 1137, 1142 (Pa.2009) (citing *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775, 778 (2005)).

However, the filing of a concise statement under that rule is mandated by trial court order. Pa. R.A.P. 1925(b) (providing trial judge **may** enter order directing appellant to file concise statement). In children's fast track cases, however, the concise statement is

¶ 5 The instant appeal is a children's fast track case. *See* Pa.R.A.P. 102. Rules 905(a)(2) and 1925(a)(2) were effective March 16th,[2] and Mother filed her notice of appeal the following day. Mother did not file her concise statement contemporaneously as required under the amendment, but rather, three days after the notice of appeal. Neither the Philadelphia Department of Human Services (DHS) nor the child advocate in this case raised any objection. In addition, the record reflects that Mother has complied with all other procedural requirements pertaining to her appeal. Because the filing of the concise statement three days after the notice of appeal does not prejudice the other parties in this case, and in light of the presumed purpose of the new amendments—to expedite the disposition of children's fast track cases—we decline to quash or dismiss the instant appeal.

¶ 6 When K.T.E.L. was two years old and residing with a family friend, Mother executed a voluntary placement agreement. (N.T. Termination Hearing, 2/17/09, at 26). The child was adjudicated dependent on January 9, 2006, and Mother was ordered to participate in a drug screen and assessment through the Court Evaluation Unit (CEU), and to have bi-weekly supervised visitation with the child. Mother's family service plan objectives were to visit the child, complete parenting and education programs and obtain suitable housing, stabilized mental health, stable employment, and financial stability. (*Id.*, at 10).

¶ 7 At a permanency hearing on June 8, 2006, testimony revealed that Mother had tested positive for barbiturates and had not followed through with the CEU, nor with another agency enlisted to assist her.[3] At the March 5, 2007 permanency review hearing, the court found that Mother was not complying with the plan objectives pertaining to mental health, parenting, employment, and housing, but was consistent with visitation. At a May 15, 2008 hearing, however, the court found that she had not regularly visited with K.T.E.L., but was participating in drug, alcohol, and mental health services.

¶ 8 On June 23, 2008, the court held a hearing on petitions filed by (DHS) to terminate the parental rights of Mother and the child's father. The court granted the petition as to the father, but denied the petition without prejudice as it pertained to Mother.[4]

¶ 9 At a permanency hearing held on November 4, 2008, the trial court found that Mother was not complying with her plan goals, had failed to sign releases of information, was not permitting DHS to monitor her mental health treatment or inspect her home, and had only visited with K.T.E.L. on two occasions. The trial court again referred Mother to CEU.

¶ 10 DHS filed a second petition to terminate Mother's parental rights on December 30, 2008. The court held a hearing on February 17, 2009, at which DHS social worker Shawn Smith testified that generally, Mother had failed to comply with her plan objectives of participating in parent-

---

mandated by a rule of appellate procedure. *See* 1925(a)(2)(i). Accordingly, we do not extend the waiver rule of *Castillo, supra,* which was articulated specifically in context of court-ordered concise statements, to the instant case.

**2.** The sixtieth day after January 13, 2009 was Saturday, March 14th. Because this day was

a Saturday, it is omitted from the computation of time. *See* 1 Pa.C.S.A. § 1908.

**3.** Mother had not attended a session with the Achieving Reunification Center.

**4.** The father did not appeal from that termination.

ing and education programs, visiting with the child, and obtaining suitable housing, stabilized mental health, stable employment, financial stability, and visitation with the child. Ms. Smith considered adoption to be in the child's best interests because she needed a loving, stable home where she would receive loving care and guidance. Ms. Smith testified that Child's current foster home provides the love and security the child requires, and she would suffer no detrimental impact if Mother's parental rights were terminated. (*Id.*, at 17–18).

¶ 11 The child's foster care worker, Amos Ajibolde of Friendship House, testified that he had been working with the family for four years. He corroborated Ms. Smith's testimony that Mother had attended only three of the last eight scheduled visits with K.T.E.L. and that Mother claimed to have missed them because she was asleep or at a doctor's appointment. (*Id.* 27–29). Mr. Ajibolde also stated that Mother did not attempt to reschedule any visits and does not talk to the child on the phone. (*Id.* at 30). The child calls her foster mother "Aunt Sudie" and is doing well in her care. He does not believe that there is a bond between Mother and K.T.E.L. because of Mother's consistent failure to visit, and that there is a bond between the child and her foster mother. (*Id.* at 35, 37). The court-appointed special advocate, Michelle Grasela, recommended that K.T.E.L. remain in her foster home and be adopted, as her foster family was meeting all her needs. (*Id.* at 45).

¶ 12 Mother testified that she participated in one session of a parenting class and missed the other sessions because of illness. (*Id.* at 51). She could not remember the last time she had sought mental health treatment or whether she had completed a course of treatment. (*Id.* at 54). Mother admitted missing her visitations

with K.T.E.L., but explained that she had other appointments or was ill each time. (*Id.* at 56–57). Mother testified that she did not attend a parenting class prior to January of 2009 and that she did not attend ARC. (*Id.* at 58–59).

¶ 13 On February 18, 2009, the trial court entered a decree terminating Mother's parental rights pursuant to subsections 2511(a)(1), (2), (5), (8), and 2511(b) of the Adoption Act. Mother timely appealed, raising the following questions for our review, whether the court erred in: (1) terminating her parental rights under subsection 2511(a)(8); (2) finding termination best served K.T.E.L.'s developmental, physical, and emotional needs under subsection 2511(b); and (3) terminating Mother's parental rights after it had previously denied a similar petition. We find no relief is due.

¶ 14 The standard and scope of review of termination of parental rights are as follows:

> In an appeal from an order terminating parental rights, "we are limited to determining whether the decision of the trial court is supported by competent evidence." "We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence." The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm "even if the record could also support an opposite result." Absent an abuse of discretion, an error of law, or insufficient evidentiary support,

the trial court's termination order must stand.

*In re Adoption of R.J.S.*, 901 A.2d 502, 506–07 (Pa.Super.2006) (citations omitted).

¶ 15 Section 2511(a) provides in pertinent part:

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

> [T]he court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child.

*R.J.S., supra* at 508 (citations omitted).

¶ 16 It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa.Super.2004).

¶ 17 In the argument section of her brief, the first issue that Mother raises is whether the court erred in terminating her parental rights under subsections 2511(a)(1), (2), (5), and (8). However, in her statement of questions involved, the first issue only includes reference to subsection (a)(8). "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Because challenges under (a)(1), (2), and (5) were not raised in the statement of questions involved, they are waived.[5] *See id.*

¶ 18 With respect to subsection (a)(8), Mother's only cited authority is that

---

**5.** This Court has reviewed issues that were not explicitly raised in the statement of questions involved, but are necessarily implied by "logical inference" in the context of the question that was raised. *See LaRue v. McGuire*, 885 A.2d 549, 554 n. 4 (Pa.Super.2005) (reasoning that to reach stated issue of whether $15,000 limit on damages included delay damages, court must first address, "although lessee does not specifically raise it," whether

an analysis of a child's needs and welfare includes review of the emotional bond between the parent and child. (*See* Mother's Brief, at 8) [6] (citing *R.J.S.*, *supra* at 508). Her only argument is as follows: "In the case at bar, no expert testimony was introduced. Neither a bonding evaluation nor a parenting capacity evaluation was performed." (*Id.* at 8). Contrary to Mother's implied contention, *R.J.S.* sets forth no requirement that expert testimony, a bonding evaluation, or a parenting evaluation be performed before the grounds of subsection (a)(8) may be found. Indeed, "[i]n analyzing the parent-child bond, the orphans' court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert." *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super.2008) (citation omitted).

■ ¶ 19 In addition, our review of the record supports the court's finding of termination under subsection (a)(8). K.T.E.L. has been in placement for more than twelve months; as of the date of the termination hearing, she had been adjudicated dependent for thirty-seven months. The court heard testimony from DHS caseworker Smith that Mother had only intermittently, over the same period of time, complied with her plan objectives, and that ultimately, had failed to achieve any of them. Foster care worker Ajibolde and special advocate Grasela opined that adoption by her foster family would serve the child's needs and welfare. Accordingly, we do not disturb the court's findings under subsection (a)(8).

■ ¶ 20 Mother's second claim on appeal is that the court erred in finding termination under section 2511(b). Mother's sole argument is as follows:

In the case at bar, there was no bonding evaluation performed and no parenting capacity evidence introduced. The CASA worker, who testified, only observed the child in her foster home setting and made no attempt to contact or observe the child while in the presence of [M]other.

(Mother's Brief, at 9). Again, we find Mother's claim that bonding and parental evaluations were required to be without merit. Instead, we conclude the following trial court findings are supported by the record:

This trial court found, by clear and convincing evidence, that terminating Mother's rights and changing the Child's goal to adoption was in [the child's] best interests. The Child receives in her foster home the comfort, security and stability that Mother is unable or unwilling to give her now, or in the foreseeable future.

The Child was two years old when the court adjudicated the Child dependent and [had] not lived with her mother for at least the three years she had been in care and a period of time proper to Mother signing the [voluntary placement agreement]. Mother was inconsistent with visitation through the three years the child had been in custody, and had only made three visits in the five months

---

court erred in refusing to award any delay damages). In the instant case, subsections 2511(a)(1), (2), and (5) provide independent bases for termination, and a finding under one does not involve consideration of any other. This Court has stated that "satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is

sufficient for termination." *R.J.S.*, *supra* at 508 n. 3. Accordingly, Mother's appeal for this Court to review the grounds under subsection (a)(8) does not necessitate consideration under the other subsections.

6. Mother's brief is not paginated. We have assigned page numbers, beginning with the statement of jurisdiction as page 1.

between court dates. Consequently, there is no bond between the Mother and the Child, so severance of that bond would not be detrimental to the Child. Consequently, the Child's developmental, physical and emotional needs and welfare are best served by terminating Mother's parental rights.

(Trial Ct. Op., at 11).

¶ 21 In her final issue, Mother avers that the court erred in granting termination when it had previously denied a petition for termination on June 23, 2008. She maintains that only a "short time" had passed between the two terminations, and that "[t]he only new evidence introduced at the February, 2009 Hearing was that [she] had appeared only at three of the eight scheduled visits since the last Court Hearing." (Mother's Brief, at 9). Mother adds that she had a reasonable explanation— medical issues—for why she failed to attend the visits.

■ ¶ 22 In response to this claim, the trial court stated that it "did not review the transcript or consider any evidence that was presented in the June 2008 hearing in reaching its" instant decision to terminate. (Trial Ct. Op., at 12). Instead, the court "conducted a new hearing on DHS's petition, heard testimony on the entire history of the case, and considered all evidence presented." (*Id.*). After a careful review of the February 17, 2009 transcript, we agree that the court properly considered the entire history of the case to determine whether termination was appropriate. Mother's arguments under this issue, that the court "only" found that she had missed additional visits, would tend to support the court's reasoning that she failed to comply with her plan.

¶ 23 Decree affirmed.