J-S29015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.P., A MINOR | IN THE SUPERIOR COURT OF |
| IN THE INTEREST OF: S.P., A MINOR | PENNSYLVANIA |
| IN THE INTEREST OF: K.P., A MINOR | |
| | |
| APPEAL OF: J.P. | |
| | No. 1806 WDA 2015 |

Appeal from the Orders September 29, 2015
In the Court of Common Pleas of Cambria County
Domestic Relations at No(s):
CP-11-DP35-2013, 11 FN 25-2013
CP-11-DP36-2013, 11 FN-25-2013
CP-11-DP37-2013, 11 FN-25-2013

BEFORE:  BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 03, 2016**

J.P. ("Father") appeals from the orders entered September 30, 2015, in the Court of Common Pleas of Cambria County, which changed the placement goals of his minor daughters, S.P.1, S.P.2, and K.P. (collectively, "the Children"), to adoption.[1]  After careful review, we affirm.

S.P.1 was born in July of 2009.  S.P.2 and K.P. are twins, and were born in September of 2011.  On August 8, 2013, Cambria County Children and Youth Services ("CYS") filed dependency petitions, in which it averred that Father and Mother lacked parenting skills, suffered from mental health

_____

[1] The biological mother of the Children is A.P. ("Mother").  Mother consented to the change of the Children's placement goals.  She did not file a separate appeal from the goal change orders, nor did she file a brief in the instant appeal.


*Former Justice specially assigned to the Superior Court.

issues, were failing to comply with the recommendations of service providers, and engaged in domestic violence. The Children were placed in foster care on August 30, 2013, and adjudicated dependent by orders entered September 19, 2013.

The trial court held a goal change hearing on August 3, 2015, and September 3, 2015, during which the court heard the testimony of psychologists, Carmella Walker, Ph.D., and Dennis Kashurba; Independent Family Services employees, Sarah Bantley, Arlene McNeel, Casey Long, and Sharon Kistemaker; CYS caseworker, Kara Thomas; licensed professional counselor, Tessa Sawyer; parenting instructor, Martha Faust; therapist, Lindsay Sossong; Father's brother, J.P.; and Father. Following the hearing, on September 30, 2015, the trial court entered its orders changing the Children's placement goals to adoption. Father timely filed a notice of appeal on October 28, 2015. Father subsequently filed an amended notice of appeal on November 2, 2015, which included a concise statement of errors complained of on appeal.[2]

_____

[2] We note that it was improper for Father to file a single notice of appeal from all three goal change orders. *See* Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). However, because Father's notice of appeal was timely filed, we will not quash his appeal. *See* Pa.R.A.P. 902 ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal….")
*(Footnote Continued Next Page)*

Father now raises the following issues for our review.

[1.] Did the [trial] court fail to properly apply the appropriate legal standards in the analysis to determine a change in placement goal?

[2.] Did the [trial] court abuse its discretion in finding a change in placement goals was appropriate?

Father's brief at 4 (unnecessary capitalization and suggested answers omitted).

We consider these issues mindful of our well-settled standard of review.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for

*(Footnote Continued)* ───────────────────

Additionally, Father violated Pa.R.A.P. 1925(a)(2)(i) by failing to file his concise statement of errors complained of on appeal at the same time as his initial notice of appeal. We have accepted the concise statement attached to Father's amended notice of appeal pursuant to *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, the trial court found that Father has made minimal progress in addressing the circumstances which resulted in the Children's removal from his care, and that he will not be able to remedy these circumstances in the foreseeable future. Trial Court Opinion, 11/30/2015, at 9. The court emphasized that Father has mental health issues which require ongoing treatment, and intellectual limitations which prevent him from developing appropriate parenting skills. *Id.* at 15. The court observed that the Children have been in foster care for an extended period of time, and that it would not be in the Children's best interest to remain in foster care when it is unlikely that Father will ever be able to act as their parent. *Id.* at 16-18.

In response, Father presents two related arguments, which we address together. Father first argues that the trial court erred by failing to make a finding that a change in goal would be in the best interest of the Children. Father's brief at 9. In connection with this argument, Father insists, "It is beyond logic[]and common sense to believe that the rupture of the parent/child bond of affection caused by a change in placement goals and

adoption will not adversely impact the three little girls in the instant case."
*Id.* at 9-10. Father next contends that the trial court abused its discretion
by changing the Children's goals, because he made progress toward
alleviating the circumstances which resulted in the Children's removal from
his care. *Id.* at 11-12.

After a thorough review of the record in this matter, we conclude that
the trial court did not abuse its discretion. During the goal change hearing,
CYS caseworker, Kara Thomas, testified that Father has been provided with
services since June of 2013. N.T., 9/10/2015, at 3. Despite over two years
of assistance, Ms. Thomas believed that Father has failed to improve his
parenting skills. *Id.* at 40-41, 43. Ms. Thomas explained that services
provided to Father included, *inter alia*, parenting and home management
instruction through Independent Family Services. *Id.* at 3-4, 7-8. Ms.
Thomas noted that Father personally terminated both of those services. *Id.*
at 7-8, 16.

Ms. Thomas further testified concerning Father's visitation with the
Children. Father formerly was offered visits with the Children at his home.
*Id.* at 24. However, these visits were moved to the CYS office in April of
2015. *Id.* At the time of the goal change hearing, Father was engaging in
weekly visits with the Children for one hour. *Id.* at 9. Ms. Thomas
expressed concern that there have been reoccurring safety issues during
Father's visits. During many of the visits, the Children "are doing whatever

they want as far as standing on the window sill, choking each other, [and] wrestling." *Id.* at 27. When these safety issues are raised with Father, he "absolutely refuses to hear them and does whatever he wants."[3] *Id.* at 30.

Ms. Thomas also described an incident which took place during Father's visit with the Children earlier that morning. *Id.* at 10. During the visit, one of the Children poured some of her drink into "a bigger lego … and went to drink it." *Id.* A caseworker stopped the child from taking a drink, and asked her to put the "bigger lego" into the sink. *Id.* Upon seeing this, Father "asked her who she was and what authority did she have to speak to his daughter."[4] *Id.* at 11. Father demanded that the caseworker be removed from the visit. *Id.* at 12. Father spoke with the CYS supervisor, who informed Father that there was no other caseworker available, and Father "just verbally continued to escalate." *Id.* Father "was yelling very loud, he was getting worked up. You could see he was shaking, he was nervous. He was mad and wanted to have that caseworker out of there." *Id.* Ultimately, Father was escorted out of the building by sheriff's deputies. *Id.* at 13.

_____

[3] Ms. Thomas acknowledged that Father was showing improvement during his visits "up until recently," and that he had three "very positive" visits with the Children following the previous court hearing. N.T., 9/10/2015, at 27.

[4] Ms. Thomas explained that this was the first time that particular caseworker was present during one of Father's visits. N.T., 9/10/2015, at 18.

Thus, the record supports the decision of the trial court to change the Children's placement goals to adoption. At the time of the goal change hearing, the Children had been in foster care for about two years. During that time, Father was provided with numerous services to assist him in being reunited with the Children. Despite these services, Father remains incapable of parenting the Children, and providing them with appropriate supervision. Father also shows little hope of improvement, as he continues to be hostile toward service providers. Contrary to Father's arguments on appeal, it is clear that the court based its decision on the best interests of the Children. Further, while there was evidence presented during the hearing that the Children have a generally positive relationship with Father, it was proper for the court to conclude that this relationship is outweighed by the Children's need for permanence and stability, and that the Children should not be left to languish in foster care indefinitely.

Accordingly, because we conclude that the trial court did not abuse its discretion by changing the Children's placements goals to adoption, we affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/3/2016