J-A09011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.P. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.B. | : | |
| | : | |
| Appellant | : | No. 1177 WDA 2020 |

Appeal from the Order Entered October 22, 2020
In the Court of Common Pleas of Allegheny County
Family Court at No: FD-15-000005

BEFORE: STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.: **FILED: June 10, 2021**

J.B. ("Mother") appeals from the order entered October 22, 2020, and amended that same day, which awarded primary physical custody of her son, J.P. ("Child"), to J.P. ("Father"). Upon review, we affirm.

Child was born in August 2014. Mother and Father were never married and never resided together. Their relationship ended shortly after Child's birth in November 2014. Currently, Mother lives in Pennsylvania with her husband, T.D. ("Stepfather"), while Father lives in Maryland. Father lived with his long-term girlfriend, K.R. ("Girlfriend"), until the onset of the COVID-19 pandemic. The record indicates Girlfriend began living separately from Father so that she would have a place to quarantine if her employment caused her to become exposed to the virus.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Importantly, the trial court entered an order on January 17, 2017, which awarded the parties shared legal custody of Child. Though the order awarded Mother primary physical custody, Father's award of custody was nearly equal to Mother's. Specifically, the order awarded Father custody every other week from Sunday at 5:00 p.m. until Saturday at 5:00 p.m. Father filed a custody modification petition on July 22, 2019, averring that Child would be attending kindergarten during the 2020-21 school year, and that it would be impossible to continue with the existing custody schedule because the parties lived so far apart.

The trial court held a hearing on Father's petition on July 27, 2020. In relevant part, Father testified that he should have primary physical custody of Child because he could provide Child with greater structure and routine, which would help him to succeed academically. N.T., 7/27/20, at 23, 34-36, 61-62. Father maintained that Child's use of electronics while in Mother's custody was excessive, and that Mother lacked age-appropriate expectations for Child. *Id.* at 52-53, 58-60, 90-93. Father further testified that Mother was belligerent and engaged in erratic behavior. He stated that Mother insults him, that she made unspecified accusations to both his employer and Girlfriend's employer, and that she appeared to be impaired at a recent custody exchange. *Id.* at 36-39, 54-56, 79-81, 99-102.

Mother attempted to refute Father's claim that he was better equipped to promote Child's academic success. Mother testified that she hired a tutor for Child and purchased the services of an education support company, but

- 2 -

that Father was not interested in the services and did not complete workbooks she had sent with Child to custody exchanges. *Id.* at 122-24, 132. She also stated she had been working at home even prior to the COVID-19 pandemic, which would make her "more accessible" than Father. *Id.* at 166. Regarding Father's assertion that she is belligerent and erratic, Mother maintained that Father insults her as well. *Id.* at 133. Significantly, Mother testified that Child threatened to shoot other students at two separate schools. *Id.* at 126, 139. During cross-examination of Father, Mother's counsel endeavored to connect these incidents with Father's decision to purchase a gun for Child, which Father insisted was not an actual firearm but a BB gun or air rifle. *Id.* at 65-68.

On October 2, 2020, after the hearing ended but before the trial court had issued its decision, Father presented the court with a petition for special relief.[1] Father averred that Child was attending fully remote instruction in his school district but attending in-person classes in Mother's school district. He requested that the court enter an order directing Child to attend fully remote instruction through his school district even when in Mother's custody.

The trial court entered the order on appeal on October 22, 2020, finding in favor of Father.[2] The court's order awarded Father primary physical custody of Child during the school year and for one weekend each month during the

_____

[1] The notice of presentation attached to the motion indicates Father presented it to the trial court on October 2, 2020. The motion was not filed until October 29, 2020.

[2] The trial court dated the order October 21, 2020, but it was entered the next day.

summer, with the specific weekend to be selected by the parties. The order awarded Mother partial physical custody for two weekends each month during the school year, from Friday after school until Sunday at 5:00 p.m. or until Monday at 5:00 p.m. if there is no school. The order further awarded Mother physical custody during school breaks and throughout the summer, excluding Father's weekends. The court entered a second order that same day, in which it addressed Father's petition for special relief. The order amended the court's prior order by clarifying that the parties would continue to alternate physical custody of Child on a weekly basis if Father's school district engaged in fully remote instruction because of the COVID-19 pandemic. Mother timely filed a notice of appeal on November 9, 2020. She filed a concise statement of errors complained of on appeal on November 19, 2020.[3]

Mother now raises the following claims for our review:

1. Did the trial court commit an abuse of discretion and/or error of law by concluding that Father would be more likely to promote a relationship with the [m]other, if he were the primary custodian, although Mother has, multiple times in the past, agreed to

_____

[3] According to the trial court, "[t]he post-mark on Mother's Concise Statement reflects a date of November 24, 2020 and was not received in chambers until the following week." Trial Court Opinion, 12/8/20, at 3 n.1. Because this is a children's fast track appeal, our Rules of Appellate Procedure required Mother to file her concise statement at the same time as her notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i) ("In a children's fast track appeal . . . [t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). Despite Mother's failure to comply with Rule 1925(a)(2)(i), we will accept her concise statement. *See In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009) (declining to quash or dismiss the appeal, or find waiver, where the appellant filed her concise statement three days after her notice of appeal).

- 4 -

additional time to the [f]ather, and Mother has always promoted a relationship with Father?

2. Did the trial court commit an abuse of discretion and/or error of law by concluding that Father would provide a more stable environment to the child?

3. Did the trial court commit an abuse of discretion and/or error of law by determining that Father would provide a more consistent environment for the child's emotional needs?

4. Did the trial court commit an abuse of discretion and/or error of law by determining that Father would be more likely to more likely to [*sic*] attend to the daily physical, emotional, developmental, educational and special needs of the child?

5. Did the trial court commit an abuse of discretion and/or error of law in its custody assessment, by emphasizing Mother's unsubstantiated impairment during an exchange of the child?

6. Did the trial court take an unreasonable amount of time in making the decision as it relates to these matters and enter an Order without the benefit of a transcript?

7. Did the trial court err in permitting Father's attorney to introduce a 60-page exhibit, encompassing text messages between Father and Mother, which exhibit was not provided to Mother's counsel until the Friday before trial at 4:15 p.m., providing counsel with an inadequate amount of time to review and respond to the document?

Mother's Brief at 8-9 (suggested answers omitted).

We consider Mother's claims mindful of the following standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether

the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that trial courts must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a), as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Mother's first, second, third, fourth, and fifth claims present challenges to the trial court's determinations regarding the Section 5328(a) factors. In its findings accompanying the order on appeal, the court concluded that the majority of the factors were neutral, that Sections 5328(a)(1), (4), (9), (10), and (14) weighed in favor of Father, and that Section 5328(a)(5) weighed in favor of Mother. In its subsequent opinion, issued in response to Mother's concise statement, the court further detailed its reasons for awarding Father

primary physical custody. The court explained that it found Father would be better able to provide Child with stability and structure. Trial Court Opinion, 12/8/20, at 7. In addition, the court explained that Father has a "concrete and sensible plan for [Child's] schooling[,]" in contrast to Mother's plan, which the court described as "nebulous[,]" and that Father would be better able to promote Child's development. *Id.* at 7-11.

Mother argues in her first claim that she is more likely to promote Child's relationship with the other parent pursuant to Section 5328(a)(1). Mother contends that she has always attempted to ensure Father and Child maintain a strong relationship, and that there was no evidence at the hearing that she ever tried to limit Father's contact with Child or made disparaging statements about Father to Child. Mother's Brief at 18-19. Conversely, she asserts that Father has never committed to ensuring Child maintains a strong relationship with her. *Id.* at 18.

The record supports the trial court's findings. Father testified Mother insults him and has made unspecified accusations to both his and Girlfriend's employers. N.T., 7/27/20, at 36-39, 99-102. While Father acknowledged that he insulted Mother in the past, he insisted that he had not done so in years. *Id.* at 99-102. This testimony suggests Mother harbors resentment toward Father and is more likely to act vindictively by interfering with his relationship with Child. Significantly, Father also testified about the importance of Child's relationship with Mother. *Id.* at 61 ("First and foremost, and I want the courts

to know, I feel that [Child] needs [Mother] as a mother and [Child] needs [Father] as his father.").

Mother's second claim is that she can provide a more stable environment for Child pursuant to Section 5328(a)(4), as Child has a positive relationship with Stepfather, the maternal grandparents live nearby, and she has a flexible work schedule. Mother's Brief at 21-22. Mother asserts that Girlfriend is less involved in Child's life, that Father's relationship with Girlfriend is unstable, and that Father has a substantial criminal history. *Id.* at 20-24.

The evidence refutes Mother's argument that she is the more stable of the parties. Contrary to Mother's assertion regarding the instability of Father's relationship, Girlfriend testified at the hearing on Father's behalf, explaining that she and Father were still in a relationship, and that they only began living separately so that she would have a place to quarantine if her employment caused her to be exposed to COVID-19. N.T., 7/27/20, at 106-07. Mother's counsel even stipulated that Father and Child "have a very good relationship with [Girlfriend] and her children[.]" *Id.* at 113. In contrast, Father testified Mother had recently offered to divorce Stepfather so that she and Father could renew their relationship. *Id.* at 50. He presented an exhibit containing text messages between the parties, which confirmed this assertion. *See* Exhibit 15. As for Father's criminal history, the record reveals that he has not incurred any criminal charges since before Child was born in 2014. Father testified he most recently incurred an assault charge stemming from an incident in 2012,

to which he pled guilty. *Id.* at 73-76, 91-94. He later violated his probation in 2013. *Id.* at 93. Notably, Mother has a more recent, albeit less serious, criminal history. Mother pled guilty to a summary disorderly conduct charge in 2016, due to an unspecified incident involving pumpkins. *Id.* at 149-51, 176 (Mother stating, "There were pumpkins in the road. I didn't throw them. There were pumpkins in the road. The woman said I threw them.").

In her third claim, Mother argues that she is more likely to provide Child with a consistent environment conducive to his emotional needs pursuant to Section 5328(a)(9). She maintains that she has always provided for Child's emotional needs, and that she worked from home even prior to the COVID-19 pandemic, which has permitted her to be very attentive to Child. Mother's Brief at 22, 25. Mother contrasts this with Father, who works in an office and has relied on daycare. *Id.* at 25. She challenges Father's testimony at the custody hearing that Child does not have a routine while in her care, that she allows Child to use electronics excessively, and that she does not have age-appropriate expectations of Child. *Id.* at 26-29.

It was within the trial court's discretion to accept Father's testimony and conclude that he could provide Child with a more consistent environment than Mother. While Mother testified she worked at home even prior to the COVID-19 pandemic and has a flexible work schedule, Father testified that his work schedule is flexible as well. N.T., 7/27/20, at 27, 129. Father indicated that he brings Child with him to his office when necessary, and that Child would be

able to attend remote classes there. *Id.* at 28-29. He emphasized the routine and structure that Child enjoys in his care while expressing concern regarding Mother's reliance on electronics and failure to treat Child in an age-appropriate way. *Id.* at 23, 34-35, 52-53, 58-62, 90-93. Father explained his concerns regarding electronics derive from Child's statements while in his custody. *Id.* at 90 ("My son tells me that all he had to do is ask his smart TV to turn on YouTube and why doesn't daddy have a smart TV to turn on YouTube."). As for Mother's lack of age-appropriate expectations, Father described a recent custody exchange during which Mother provided Child, who was nearly six years old at the time of the hearing, with a baby bottle of milk. *Id.* at 58-60, 93.

In her fourth claim, Mother argues that she would be more likely to meet Child's needs pursuant to Section 5328(a)(10). Mother contends that she has a better understanding than Father of Child's academic abilities and has done more to promote his academic success by hiring a regular tutor and obtaining the services of an education support company. Mother's Brief at 30-32. She maintains that Father has unrealistic expectations of Child's ability to focus on schoolwork for long periods, did not keep her informed of Child's schooling in Maryland, and hired a tutor that met with Child only once or twice per month. *Id.* at 30-33. Mother also asserts that Father purchased a gun for Child, which resulted in Child threatening to shoot other children at two separate schools. *Id.* at 34.

Both parties testified at the hearing that they work to help Child achieve academic success, although it is apparent from their testimony that they did not always agree on how to do this. *See* N.T., 7/27/20, at 12-13, 16-19, 61-64, 85-86, 122-29, 132, 152-60, 164-66. It was for the trial court to assess and weigh the testimony and determine which party would best meet Child's educational needs. With respect to Mother's concern that Father purchased a gun for Child, Father testified that he purchased a BB gun or air rifle for Child, and that Child used it with supervision and while attending a youth program at a club. *Id.* at 65-67, 96-98. Father also clarified that Child had not been using the gun recently, since Mother asked Father to "wait another year," and that Child was now focusing on archery instead. *Id.* at 98.

Mother's fifth claim is that the trial court abused its discretion or erred by finding, pursuant to Section 5328(a)(14), that she was impaired while Child was in her custody in 2020. She emphasizes that Father allegedly observed her to be impaired while she was obtaining custody of Child at an exchange, but that he allowed her to depart with Child despite his concerns and took no further action. Mother's Brief at 36-38.

The record once again supports the trial court's findings. Father testified that the incident in question occurred in April 2020, and that Mother exhibited "glassy eyes. . . . body language which was a little bit uncoordinated or slower. . . . [and] slower speech." N.T., 7/27/20, at 55. He reported that Mother did not smell like alcohol, and that he did not believe she drinks, so he

suspected she was "under the influence of some sort of medication[.]" *Id.* at 54-55. Notably, contrary to Mother's argument that Father did nothing in response to his concerns, Father testified that he inquired with Mother about her condition and later called Child's maternal grandmother, asking her to check on Mother. *Id.* at 55-56, 79-80. Mother acknowledged during her own testimony that Father confronted her about her condition during an exchange but denied that she was impaired at the time. *Id.* at 137-38.

As we explained above, and as we have often emphasized, it is within the discretion of the trial court to make credibility determinations and weigh the evidence, and we must defer to the court's determinations and findings if the record supports them. *V.B.*, 55 A.3d at 1197. Our review of the record supports the court's findings and determinations here. Therefore, we conclude that the trial court did not abuse its discretion, and that Mother's first, second, third, fourth, and fifth claims do not entitle her to relief.

The sixth claim Mother presents in her statement of questions involved is that the trial court took "an unreasonable amount of time in making the decision as it relates to these matters and enter[ed] an Order without the benefit of a transcript[.]" Mother's Brief at 6. Mother does not develop this claim in the argument section of her brief or even mention it again in any way. Therefore, she has waived this claim, and we do not address it. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this

Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").

Finally, in her seventh claim, Mother challenges the trial court's decision to admit Exhibit 15, which contained text messages between her and Father. Mother maintains she did not receive Exhibit 15 until after her counsel's office closed on Friday, July 24, 2020, and the hearing began on Monday, July 27, 2020. Mother's Brief at 38-39. She contends that the court provided her only fifteen minutes to review the exhibit, which was insufficient due to its length, and that the exhibit was prejudicial because of its "lopsided" presentation of her character and personality. *Id.* at 39-40.

Mother failed to preserve this claim for two reasons. First, she does not support it in her brief with any citation to legal authority. *M.Z.T.M.W.*, 163 A.3d at 465. Second, a party must make a timely and specific objection to preserve a claim for our review. *In the Interest of L.V.*, 209 A.3d 399, 418 (Pa. Super. 2019). The record reveals that Mother withdrew her objection to the admission of Exhibit 15 during the hearing, as follows:

> [Mother's counsel]: I would object to that exhibit. That exhibit was sent to my office on Friday at 4:15. We close at 4 o'clock. I did not see this exhibit until today. Haven't had an opportunity – it's multiple pages. It's like 60 pages long, and I have not had a full opportunity to go through that since I saw it this morning.
>
> [Father's counsel]: I have no problem taking a 15-minute break to review the exhibit.
>
> [Mother's counsel]: The problem that I have, Judge, is that there's multiple text messages that I would like to be able to go

through. Again, it was -- and I normally don't do this, but on text messages, I do. It was filed late, first off, and second, it was sent to me on a Friday after hours and not even with a phone call to say, "Hey, we sent you this other exhibit. Did you get it?" And now they want me to take 15 minutes to go through it and see if there's any questions that I want to ask on it. So that would be my objection.

\*\*\*

THE COURT: Okay. Then we're going to take a 15-minute break so that we can review and [Mother's counsel] can go through these. If your client is a participant in these, which I suspect all of these are, then there shouldn't be an issue.

[Mother's counsel]: Well, again, Your Honor, I don't know what the issues would be without the opportunity to look at them. But again, my understanding of your order was that no documentation would be accepted after the time that they were supposed to be filed, which was Thursday. But again, in an effort not to hold up the Court, if your ruling is that they're going to be allowed, I'll allow my client to go through them, see if there's anything that she finds concerning in them, and then I'll address them as I can.

THE COURT: Okay. Well, then, we'll be back on in –

[Mother's counsel]: Judge, I don't even need the time. I'll let her do that while he's questioning his client.

THE COURT: Okay. All right.

\*\*\*

[Father's counsel]: And, Your Honor, I would move to have Exhibit 15 entered into evidence. I understand there's an objection pending with regard to that exhibit.

THE COURT: [Mother's counsel], what's your objection?

[Mother's counsel]: Based upon your prior ruling, Your Honor, I would withdraw my objection.

THE COURT: Okay. Exhibit 15 is admitted.

- 15 -

N.T., 7/27/20, at 43-52.

Moreover, even if Mother had not waived this claim, we would conclude that it is meritless. "[T]he decision of whether to admit or exclude evidence is within the sound discretion of the [trial] court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, inter alia, the [trial] court overrides or misapplies the law." *In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted).

Our review of the record does not indicate that the trial court abused its discretion here. As the court explains in its opinion, both of the parties listed text messages as potential exhibits in their pre-trial statements. Trial Court Opinion, 12/8/20, at 11. Further, since Mother was a participant in the text messages, their contents should not have come as a surprise to her. *Id.* at 12. Perhaps most damaging to Mother's assertion that Exhibit 15 was unfairly prejudicial is that the court offered her counsel fifteen minutes to review the exhibit, and he declined, stating that he "d[id]n't even need the time." N.T., 7/27/20, at 46.

Accordingly, based on the foregoing analysis, we conclude that Mother's claims do not entitle her to relief. We discern no abuse of discretion or error of law by the trial court, and we affirm the court's October 22, 2020 order, as amended that same day, awarding primary physical custody of Child to Father.

Order affirmed.

J-A09011-21

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/10/2021