J-A27030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: X.J.L., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., MOTHER | : : : : : : | No. 793 MDA 2024 |

Appeal from the Decree Entered April 26, 2024
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s): 2023-00041

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED: FEBRUARY 25, 2025**

J.C. ("Mother") appeals from the decree, entered in the Court of Common Pleas of Lackawanna County, Orphans' Court Division, granting Appellee[1] Paternal Grandmother's petition to involuntarily terminate Mother's parental rights to her minor child, X.J.L. ("Child") (born December 2013). We quash.

Prior to addressing the merits of the case, we must determine whether Mother's appeal is properly before this Court. Mother was required to file her notice of appeal no later than 30 days after entry of the Orphans' Court's April 26, 2024 order, or by May 28, 2024. *See* Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after entry of order from which appeal taken).

---

[1] Paternal Grandmother and Kim Giombetti, Esquire, legal counsel for Child, have filed a joint appellees' brief in this matter.

On May 23, 2024, Mother's counsel filed a document titled "*Praecipe* to Appeal," which stated as follows: "Please transmit my appeal, on behalf of my client . . ., [M]other, in the above-captioned case." *Praecipe* to Appeal, 5/23/24. Thereafter, on May 31, 2024, counsel filed a "Notice of Appeal," which stated the following:

> Notice is hereby given that [Mother], defendant above named, hereby appeals to the Superior Court of Pennsylvania from the order entered in the matter on the 26th day of April, 2024. This order was entered on the docket as shown by the attached copy of the docket entry. [Mother] appeals from the decision involuntarily terminating her parental rights. A *Praecipe* for Appeal was filed with the Register of Wills of Lackawanna County [on] May 23, 2024. A [c]opy of said [p]raecipe is attached hereto.

Notice of Appeal, 5/31/24.

On June 13, 2024, Appellees filed an application to quash, averring that Mother's notice of appeal was untimely filed. Mother's Counsel did not respond to the application to quash. On July 12, 2024, this Court quashed the appeal for lack of jurisdiction over an untimely appeal.

On August 1, 2024, Mother's counsel filed an "Application for Reconsideration of Order," averring as follows:

> On May 31, 2024, upon recognizing that the [*Praecipe* for Appeal] was procedurally defective, Mother's counsel filed a Motion for Appeal,[2] with a summary of the grounds for appeal of the lower court's decision, and a notice of service on all relevant parties.

---

[2] Neither the trial court docket nor this Court's docket reflects the filing of a "Motion for Appeal."

- 2 -

On June 12, 2024, [the] Honorable Edward D. Reibman, issued an order granting [Mother] an additional 21 days to comply with the procedural requirements for filing an appeal.

On June 13, 2024, counsel for [Paternal Grandmother], Jillian Kochis, Esquire, filed a motion to quash Mother's appeal. Because Judge Reibman had granted [Mother] an additional 21 days to comply with the requirements for filing an appeal, [Mother] felt entitled to rely upon [H]is Honor's order, and did not deem it necessary to file a response to the motion to quash the appeal.

Application for Reconsideration, 8/1/24, at 1-2 (reformatted; unnecessary capitalization omitted). On August 1, 2024, Paternal Grandmother's counsel filed an answer to Mother's application, stating that Mother's "*Praecipe* for Appeal" was ineffective, deficient, and failed to comply with Pa.R.A.P. 903-905.

In light of the fact that there is no caselaw directly on point as to whether a "*Praecipe* for Appeal" can be treated as a notice of appeal by this Court under these circumstances, and the potentially conflicting cases of **Stout v. Universal Underwriters Ins. Co.**, 421 A.2d 1047 (Pa. 1980) (failure to take any step other than timely filing of notice of appeal does not affect validity of an appeal, and that Rules of Appellate Procedure were not intended to be so rigidly applied as to result in manifest injustice, particularly when there has been substantial compliance and no prejudice) and **Commonwealth v. Keys**, 460 A.2d 253 (Pa. Super. 1983) (Court has no authority to extend the time for filing a notice of appeal), this Court issued a *per curiam* order (1) granting Mother's application for reconsideration; (2) reinstating her appeal; (3) advising Mother's counsel that the merits panel would determine whether, under these circumstances, a "*Praecipe* for Appeal" can be treated as a notice

of appeal; and (4) advising Mother's counsel that he should be prepared to address, in his appellant's brief or at the time of oral argument, the issues raised in the order. *See* Order, 8/13/24. In her appellate brief, Mother failed to address the issue of whether we may treat her "*Praecipe* for Appeal" as a timely filed notice of appeal.

In children's fast track cases, there is no *per se* rule requiring that a defective notice of appeal be automatically quashed or dismissed. In **In re K.T.E.L.**, 983 A.2d 745 (Pa. Super. 2009), a panel of this Court opined that the failure to file a Rule 1925(a)(2)(i) concise statement contemporaneously with the notice of appeal constitutes "a defective notice of appeal," and we dispose of such matters on a case-by-case basis pursuant to **Stout**, **supra**. **In re K.T.E.L.**, 983 A.2d at 747. In **Stout**, our Supreme Court held that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been **substantial compliance** with the rules and **when the party [moving for quashal of the appeal] has suffered no prejudice**." **Stout**, 421 A.2d at 1049 (emphasis added).

Here, Mother's May 23, 2024 "*Praecipe* to Appeal" does not substantially—or even minimally—comply with the rules of appellate procedure. Setting aside the incorrect titling of the document, the "*praecipe*" does not: (1) indicate the date of the order from which the appeal is taken; (2) state that the order appealed from has been entered on the docket; (3) attach a copy of the docket entry showing the entry of the appealed-from

order; or (4) include a statement advising this Court that the appeal is a children's fast track appeal. *See* Pa.R.A.P. 904(a), (d), and (f). Additionally, Mother did not comply with Pa.R.A.P. 906, which requires that the appellant serve copies of the notice of appeal—and provide proof thereof—upon all parties, the trial judge, the court reporter, and "the district court administrator or other person designated by the administrator pursuant to Rule 4007(B)(3) of the Pennsylvania Rules of Judicial Administration." Pa.R.A.P. 906(a). Finally, Mother failed to comply with Pa.R.A.P. 1925(b)(a)(2)(i), requiring that a children's fast track appellant file and serve its Rule 1925(b) statement contemporaneously with the notice of appeal.[3]

Additionally, we agree with the argument of Appellees that they would suffer prejudice as a result of

> the substantial financial obligation to defend against Mother's frivolous appeal and the ongoing responsibility of addressing [Child's] enduring fear and concern that he may be returned to the harmful environment of Mother. Furthermore, the ongoing uncertainty and delays compromise the welfare of [Child], who remains in a state of distress, fearing the potential return to said harmful environment[.] Every moment that this case remains unresolved extends the burden of anxiety on this young child, who deserves stability and permanency.

Brief of Appellees, at 17-18.

Because Mother's *praecipe* to appeal was in all respects non-compliant with our appellate rules, her rules-compliant notice of appeal was untimely,

---

[3] We further note that Mother failed to pay a filing fee until May 29, 2024.

and Appellees—most importantly, Child—are prejudiced by a delay in finalizing this matter, **see Stout**, **supra**, we are constrained to quash the appeal.[4]

_____

[4] Even if we were to consider the merits of Mother's appeal, she would be entitled to no relief. The sole issue raised in Mother's brief is that the Orphans' Court "failed to consider the existence and strength of the bond between Mother and Child, in terms of the impact of severing this bond, in terms of the developmental, physical[,] and emotional needs of [Child], and the effect such severing of the bond would have on [Child's] best interests." Brief of Appellant, at 2. Setting aside the utterly deficient nature of Mother's appellate argument, the record demonstrates that the Orphans' Court gave ample consideration to any existing bond and concluded that "[n]o bond exists between [Mother] and [] Child." Orphans' Court Opinion, 4/26/24, at 14. This conclusion is supported by the record. At the termination hearing, Brenda Kobel, Esquire, Child's guardian _ad litem_ ("GAL") for custody matters since 2019, testified that Child had no contact with Mother between 2019 and 2022 and has subsequently had no contact with Mother since October 2022. **See** N.T. Termination Hearing (Morning Session), 1/17/24, at 34, 130. During previous attempts at reunification, Child regularly indicated to GAL that he did not wish to attend visits with Mother because of a "lack of trust" and a fear that Mother would return to his father, who has a history of domestic violence, which has left Child suffering from trauma. _Id._ at 37, 43-44. GAL testified that, "at this point, [Child] does not feel a bond with [Mother]," "does not feel a desire to develop a bond" with Mother, and that "[h]is bond is with [Paternal Grandmother,]" whom he refers to as "his mom." _Id._ at 52.

Tara Walker, Child's counselor since 2017, testified that Child is fearful of being hurt by his parents and has previously returned from visits with burn marks, scratches, dog bites, bleach in his eye, black eyes, and bruises on his back. _Id._ (Afternoon Session) at 41. Walker testified that Child is "terrified of his parents to the point that he checks [Walker's] office to be sure that they're nowhere around before he will come in and settle down before a session." _Id._ at 43. Walker testified that Child has "[a]bsolutely not" expressed a desire to reunify with his parents and that, "[a]s long as [he] does not have contact [with parents] he does well." _Id._ at 43-44. Walker stated that Child gets "very upset" if he sees Mother in public places. _Id._ at 46. She further testified that she "never witnessed [a] maternal bond" between Child and Mother. _Id._ at 68; **see id.** at 69 (Walker testifying that, if Child got hurt, "there wasn't that maternal bond where [] there would be the comforting that you would normally see. He didn't go to her for comfort; he

_(Footnote Continued Next Page)_

Appeal quashed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/25/2025

---

just would sit there and cry."). Finally, Walker testified that it was in Child's best interest for Mother's parental rights to be terminated and for him to be adopted by Paternal Grandmother. ***Id.*** at 77-78.

In light of the foregoing, we would affirm the decree of the Orphans' Court involuntarily terminating Mother's parental rights to Child.